(No. 14102.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN BUSH, Plaintiff in Error.

*Opinion filed December 22, 1921.*

1. CRIMINAL LAW—*when a special grand jury is legally impaneled.* Section 19 of the Jury act authorizes the judge of any court of record to order a special venire for a grand jury whenever he shall be of opinion that public justice requires it, and where such grand jury is ordered at the first day of the term there is no defect in the special venire because it is made returnable the next day, as the statute does not state when the venire shall be returnable but only that it shall state the day on which the persons summoned shall appear.

2. SAME—*motion for continuance must be included in bill of exceptions.* Error assigned on the overruling of a motion by the defendant for a continuance cannot be considered on review, where neither the motion, nor the affidavits in support of it, are made a part of the bill of exceptions.

3. SAME—*when conduct of State's attorney on cross-examination is prejudicial.* Conduct of the State's attorney in repeatedly asking such questions of the defendant on cross-examination as

he must have known were incompetent, and which could have been asked with no other purpose than to take an unfair advantage of the defendant by insinuating facts which could not legally be proved, is prejudicial error even though objections to the questions are sustained.

4. SAME—*surety should not be required to testify that he had signed other bonds for defendant.* A witness who is surety on the defendant's recognizance should not be required to testify on cross-examination, and over objection by the defendant's counsel, that he had signed four other bonds for the defendant, as such testimony is indirect proof of other criminal charges pending against the defendant.

5. SAME—*what testimony as to conversation with defendant is improper in prosecution for rape.* In a prosecution for statutory rape, testimony by the defendant's business associate as to a conversation he had with the defendant concerning the latter's conduct in spending his time with "young girls" is incompetent as an implied admission of guilt, where it refers only to the general course of conduct of the defendant and not to his relations with the prosecuting witness.

6. SAME—*rape—what testimony as to physical condition of the prosecuting witness is incompetent.* In a prosecution for statutory rape, where the defendant has testified to facts tending to show that the prosecuting witness had syphilis, testimony by a social worker in rebuttal is incompetent, where she has no personal knowledge of the girl's condition but bases her testimony on the fact that the girl was admitted to a public institution where the Wasserman test was given to every girl admitted and that the prosecuting witness was classified as free from venereal disease.

WRIT OF ERROR to the Circuit Court of Saline county; the Hon. WILLIAM N. BUTLER, Judge, presiding.

CHARLES T. FLOTA, and FOWLER & RUMSEY, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, CHARLES H. THOMPSON, State's Attorney, and JAMES B. SEARCY, for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

The plaintiff in error, John Bush, seeks to reverse the judgment of the circuit court of Saline county by which he was convicted of statutory rape and sentenced to imprison-

ment in the penitentiary for ten years, on the grounds of the insufficiency of the evidence and error in the record.

The special grand jury which returned the indictment was ordered at the first day of the June term, 1920, which was the fourteenth day of the month. The venire was made returnable the next day. It is claimed that for this reason the grand jury was not legally impaneled. Section 19 of chapter 78 of the Revised Statutes authorizes the judge of the court to order a special venire for a grand jury whenever he shall be of opinion that public justice requires it. The section does not state when the venire shall be returnable, but only that it shall state the day on which the persons summoned shall appear. There was no defect in the special venire.

Objection is made to the indictment because it is said that Edwin Stricklin was sworn as foreman of the grand jury but the indorsement on the back of the indictment is signed by Ed M. Stricklin as foreman of the grand jury. An examination of the record shows that Ed M. Stricklin was summoned as a grand juror, was appointed foreman and signed the indorsement on the back of the indictment, and the objection, therefore, is not sustained by the record.

The indictment consisted of three counts, the second of which was quashed because it failed to allege that the girl on whom the offense was alleged to have been committed was under the age of sixteen years. It is contended that the third count should have been quashed for the same reason, but an examination of the third count shows that it does contain the allegation the omission of which is complained of.

Error is also assigned on the overruling of a motion by the defendant for a continuance, but this motion, and the affidavits in support of it, are not made a part of the bill of exceptions, and therefore we cannot consider them.

The fourteen-year-old girl who was the alleged victim testified positively to the commission of the crime and the

defendant with equal positiveness denied his guilt. She was corroborated by circumstances testified to by another girl of about her own age, by the probation officer and by an associate of the defendant in the taxicab business. She was impeached by numerous contradictory statements testified to by many witnesses which she admitted having made, including an affidavit in which she stated that she never did have sexual intercourse with the defendant, and that if she made oath before Ed M. Stricklin, a justice of the peace, that she did have intercourse with him she did not know what she made oath to. The testimony was conflicting and the question on the evidence close. Since the judgment must be reversed for error in the record no further comment will be made on the evidence.

Complaint is made of the conduct of the State's attorney. On the cross-examination of the defendant the State's attorney asked him these questions: "John, you made a specialty down at that garage of enticing little girls ten, twelve and fifteen years old,—in taking them out driving?" "This is not the first girl you done that way to, is it?" "Didn't you make the remark down at your garage when you was arrested in there why you didn't run around after women?—that little twelve-year-old girls was your prey?" An objection to each of these questions was sustained by the court. They were, of course, incompetent. It cannot be presumed that the State's attorney was so ignorant as not to know they were incompetent, and therefore his intention in asking the questions could have been no other than to take an unfair advantage of the defendant before the jury by an insinuation of facts which he knew he could not legally bring to the attention of the jury but which he believed would prejudice the defendant on his trial.

Complaint is also made of other misconduct of the State's attorney as well as of the trial judge, but there is nothing in the record on which to base the complaint. The counsel on both sides have inserted in their briefs state-

ments of a number of things which are said to have been done and to have been proved on the trial of which the record contains no intimation. Of course, these statements cannot be considered in the disposition of the case and the insertion of them in the briefs was improper.

Charles Leeper was a witness for the defendant and it appeared that he was surety on the defendant's recognizance. On cross-examination the witness was asked how many other bonds he had signed for the defendant, and over the defendant's objection answered that he had signed four. It was incompetent in this indirect way to prove that other criminal charges were pending against defendant, and it was error for the court to permit it.

Andy Jenkins, who was associated with the defendant in the taxicab business, was a witness for the People, and among other things said that he talked to Bush before he was arrested about Hazel Keneipp, the prosecuting witness, and was asked the question, "Tell the jury what you said to him." The abstract then continues as follows:

"I said that—John, I says, you spending you time with these youngsters and get youself into trouble first thing you know. You need to stay to work; stay to your business and make living for your wife. I said he needs money; he work and stay close to business and let these young girls alone. He said he was having a pretty good time. He said it was worth it. I said, you are spending your time and losing money on the side. Said something to him about Hazel Keneipp. I said, let these young girls alone; take care of your business.

Mr. H. R. Fowler: "I move to exclude the answer. It is not responsive and does not involve any question between the prosecuting witness and the defendant.

The court: "Yes, she was included, and two or three more on the side.

Mr. Fowler: "I object to the remarks of the court; I want to take down the language that he used, 'girls.'

The court: "And it includes the prosecuting witness. Defendant objects to the statement and asks that it may be excluded from the jury."

Nowhere does the witness use the name of Hazel Keneipp. Nowhere does it appear that her name was mentioned in the conversation. In response to the leading question, "Did you ever say anything to him about Hazel Keneipp?" the witness answered "Yes," but when asked what he said about her, all he said was, "Let these young girls alone." This general statement did not, on its face, refer to Hazel Keneipp, and there is nothing in the conversation detailed by the witness identifying Hazel Keneipp as its subject. What the witness was talking about was these youngsters and young girls. He advised Bush to let them alone and take care of his business. This evidence was competent only on the theory of an implied admission by the defendant that he was spending his time with these young girls and neglecting his business. So far as any other girls than the prosecuting witness were concerned, such an admission would be incompetent because not tending to prove the guilt of the defendant in connection with the prosecuting witness. If the conversation was about the general course of the defendant's conduct it was incompetent, but if it referred to his conduct in relation to. Hazel Keneipp in particular it was competent. The defendant's motion to exclude the answer on the ground that it did not involve any question between the prosecuting witness and the defendant should have been sustained. The statement of the witness that he said something to the defendant about Hazel Keneipp is not borne out by the words he used. While he may have had Hazel Keneipp in his mind he did not mention her name, but his language referred to the general course of conduct of the defendant and not to his association with any particular girl. The objection was made for that reason, but the court overruled it, saying that she was included and two or three more on the side. This,

however, was the statement of the court and not of the witness. If the evidence was competent at all, it was for the jury, and not the court, to say whether she was included or not. The language of the witness was, "girls." The defendant's attorney objected to the remark of the court and called the attention of the court to the fact that the word used by the witness was "girls," but the court said, "And it includes the prosecuting witness." In making these statements he trespassed on the province of the jury, whose duty it was to determine what the language of the witness referred to, if it was competent at all. In the condition of the record all the testimony in regard to this conversation should have been excluded.

Dr. E. M. Travelstead, a dentist living in Harrisburg, was called as a witness by the defendant and asked in regard to a conversation with Hazel Keneipp in Reese Lightfoot's office,—whether she had not told him there that she was not guilty of this charge. The court sustained an objection to the question because she had admitted the conversation. The record shows, however, that Hazel Keneipp testified that Dr. Travelstead was in Lightfoot's office when she was there, but she had no conversation with him concerning her relations with Bush and that she did not deny having sexual intercourse with Bush. This objection should have been overruled. The prosecuting witness did admit having denied on various occasions, in the presence of various persons, that she had had sexual intercourse with Bush, but that was no reason why the defendant should not be permitted to prove the same statement on other occasions by other witnesses.

The defendant testified that Hazel Keneipp at one time asked him to lend her five dollars, and told him that she had been out with different fellows and that one had given her some disease and offered to show him the places on her body, and said she did not know what it was unless it was syphilis; that he saw a place through her hose, and

she said such places were on her body.  He lent her five dollars, and she told him afterward that she had used the money for treatment with Dr. Hart.  In rebuttal the State offered as a witness Minnie Nolen, who was a social service worker attached to the Geneva Home for Delinquent Girls, in which Hazel Keneipp was between the finding of the indictment and the trial of the cause.  Over the defendant's objection she was permitted to testify that when girls were taken to the institution they were given a Wasserman's test for the detection of syphilis, and that according to their classification Hazel Keneipp was absolutely free from any venereal disease; that she was not placed in any cottage. Miss Nolen testified that she was not a physician, never studied medicine or anatomy, the girl was not under her charge and she had no personal supervision over her and made no personal examination of her.  She testified that the Wasserman test was given to every girl.  This testimony was hearsay and incompetent.  Miss Nolen had no personal knowledge about the matter.  She only testified to the custom about examinations, and she had no personal knowledge of the examination or its result.  It was error to admit this testimony.

The court gave ten instructions at the request of the prosecution, four of which were on the subject of reasonable doubt.  One of these instructions was the instruction condemned in *People* v. *Andrae,* 295 Ill. 445, on page 461. Instructions intended to elucidate to the jury the meaning of the term "reasonable doubt" frequently only cloud the meaning.  Argumentative instructions should not be given, and this instruction in particular has been condemned.  It was error to give it.

For the errors occurring on the trial the judgment of the circuit court is reversed and the cause is remanded.

*Reversed and remanded.*