THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM DE KOSTA, Defendant-Appellant.

(No. 54447;

First District—April 2, 1971.

Gillis, Gildea & Rimland, of Chicago, (Kenneth L. Gillis, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Michael J. Goldstein, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant was found guilty, after a jury trial, of the offense of reckless conduct. (Ill. Rev. Stat. 1967, ch. 38, par. 12—5.) Judgment was entered and he was sentenced to a term of nine months in the Illinois State Farm at Vandalia. On appeal defendant's principal contentions are: (1) that the complaint was insufficient to charge him with reckless conduct; (2) that the impeachment of one of his witnesses was improper; (3) that he was denied a fair trial when the prosecutor "suspended the laws of evidence"; (4) that the trial judge erred when he failed to strike a reference to defendant's involvement in "other crimes"; (5) that the cross-examination of defendant's character witnesses was improper; and (6) that the prosecutors used improper evidence in argument to the jury.

Defendant does not challenge the sufficiency of the evidence, which may be summarized. The defendant was charged with reckless conduct stemming from a rock throwing incident which took place on August 6, 1968. At trial, Officer Phillip Hardiman testified that during the evening of August 6, 1968, he observed the defendant as a member of a crowd which had gathered at 147th and Leavitt Streets in Harvey,

Illinois. He saw the defendant throw a stone he was holding. The stone struck the right hand side of the windshield of a Ford station wagon where a woman was sitting. The woman appeared to be injured. He also saw the defendant and others throw bricks at a passing taxi and police cars and police officers. He knew the defendant by his face and name prior to the night of August 6th.

Officer William Martin also testified that he saw the defendant throwing rocks at passing vehicles. The defendant was but one of many of the crowd throwing rocks. He did not know whether the rocks thrown by the defendant hit anything.

Two other officers, Jackson and Graves, testified that they saw defendant in a crowd at 147th Street on August 6, 1968. They saw various members of the crowd throw rocks and bricks at passing cars. However, neither witness saw the defendant throw any rocks. On cross-examination Officer Jackson was asked by defense counsel if he had discovered whether or not the defendant belonged to any militant group. The officer stated that as far as he knew the defendant was president of a militant organization. On re-direct he testified that defendant was president of the Black Elephants.

Homer Dye testified for the State that he was injured when a piece of cement came through the windshield of his car as he was driving along 147th Street on August 6, 1968.

Dr. William Jackson testified for the defendant that he was well acquainted with the community in which the defendant resided. He stated that he was "familiar with many of the people in the community and in community organizations." To the best of his knowledge the defendant's reputation in the community was that of a law abiding citizen; that in his opinion defendant was truthful; and that generally defendant's reputation is that he is a truthful person.

Lester Crowder testified that he was vice-president of the Black Elephants and that defendant was never associated with the group.

Virginia Doll was another character witness for the defendant. She is a bartender at the Curve Inn in Dixmoor. She knew the defendant for two years. At the Curve Inn he had a reputation as a law abiding and peaceful citizen.

The defendant testified that he "drifted on down" with a crowd after someone said something was going on down at the A & P. He was in the company of Andrea Hughes. When the crowd began to scatter, Miss Hughes and he did likewise. He could see the flashes of guns and he saw policemen firing. He denied throwing rocks at passing motorists. He ran from the area when he heard the gunfire.

Andrea Hughes corroborated the defendant's testimony. She did not

see the defendant throw any rocks while she was with him. On cross-examination she denied having said anything in the presence of Officer Martin implicating the defendant in any way with the events of August 6th.

In rebuttal, Officer Martin testified that he was present when Andrea Hughes told one Gerald Phelps that on August 6th she "had a good time," and said "Yeah, I threw a brick through a station wagon rear window. Everything was all right till De Kosta and Bowman started shooting."

Officer Hardiman testified in rebuttal that the defendant "was the same man I saw throwing bricks at passing motorists." He also testified that he heard shots being fired and that seven policemen were shot during the disturbance.

*Opinion*

Defendant contends that the complaint for reckless conduct is insufficient to charge him with that offense since the complaint does not charge that his actions endangered a specifically named individual. Reckless conduct is defined in Illinois Revised Statutes, 1967, ch. 38, par. 12—5, as:

"A person who causes bodily harm to or endangers the bodily safety of an individual by any means, commits reckless conduct if he performs recklessly the acts which cause the harm or endanger safety, whether they otherwise are lawful or unlawful."

The complaint charged that the defendant "on or about August 6th, 1968 at 147th and Leavitt, Harvey, Ill. committed the offense of Reckless Conduct in that he did endanger the bodily safety of passing motorist [sic] by recklessly throwing rocks at the passing motor vehicles in violation of Chapter 38, Section 12—5."

In *People v. Raby*, 40 Ill.2d 392, defendant was charged with the offenses of disorderly conduct and resisting arrest. Illinois Revised Statutes, 1967, ch. 38, par. 26—1(a)(1) defines disorderly conduct·as:

"A person commits disorderly conduct when he knowingly:

(1) Does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace; * * *."

The complaint in *Raby, supra,* 339, alleged that the defendant:

"* * * on or about 28 June 1965 at Randolph and LaSalle committed the offense of disorderly conduct in that he knowingly did collect in a crowd or body for unlawful purposes or for purposes to the annoyance or disturbance *of other persons,* in such unreasonable manner as to alarm and to *disturb another* and to provoke a breach of the peace." (Emphasis ours.)

Defendant Raby argued that the disorderly conduct complaint was not

sufficiently specific to charge the offense. However, even though the language of the complaint failed to identify a specific person, ("other persons," "disturb another") the court found that the defendant was adequately apprised of the nature of the offense.

■■ In *People v. Crouch*, 29 Ill.2d 485, the defendant was charged with forgery but the indictment did not specify the person intended to be defrauded. In upholding the indictment the court stated at page 488:

"The gist of the offense of forgery is the intent to defraud involved in the making of a forged instrument or knowingly uttering the same. The offense is not less inimical to society, nor any more nor less harmful, by reason of the identity of the party defrauded or intended to be defrauded."

In the instant case the gist of the action was reckless conduct "which endangers the bodily safety of an individual" and the identity of the person endangered is not an element of the offense.

The cases cited by defendant, *People v. Smuk*, 12 Ill.2d 360, and *People v. Greene*, 92 Ill.App.2d 201, are not in point since in both cases the victim was named in the charge.

Defendant also argues that the impeachment of Andrea Hughes was improper. On direct examination Miss Hughes testified that she was in the crowd with the defendant on the night of August 6, 1968, when she heard gunfire; that he led her to cover; and that he did not throw rocks while in her presence. On cross-examination she denied having made certain comments to a Gerald Phelps, in the presence of Officer Martin, concerning the activities of the defendant on August 6th. She insisted that she had said nothing but "hi," and denied knowing who had done the shooting.

However, in rebuttal Officer Martin testified that he was present when Miss Hughes, referring to the night of August 6th, said to Gerald Phelps:

"Yeah, I threw a brick right through a station wagon rear window." Then she said, "Everything was all right till DeKosta and Bowman started shooting."

■■■ Defendant claims that this evidence was hearsay testimony and prejudicial to his defense. It is well established that evidence of prior inconsistent statements by a witness is admissible to impeach a witness' credibility. Such evidence is not admitted as proof of the truth of the witness' out-of-court statements but to cast doubt on the truth of the testimony of the witness. Such evidence is not hearsay. (*People v. Moses*, 11 Ill.2d 84; *People v. Morgan*, 28 Ill.2d 55; *People v. Lechner*, 60 Ill.App.2d 472; and *People v. Smith*, 63 Ill.App.2d 369.) The defen-

dant called Andrea Hughes as his witness and vouched for her veracity. Therefore, it was proper for the prosecution to attempt impeachement of the witness' testimony by her prior inconsistent statements.

■■ Defendant next contends that he was denied a fair trial when the prosecutor "suspended the laws of evidence." He argues that Officer Martin's testimony concerning the assignment instruction Martin received on August 6th was hearsay and therefore inadmissible. Officer Martin testified that his instruction was "to infiltrate the group and attempt to find out who the main troublemakers were in the group." We believe that the alleged error was harmless beyond a reasonable doubt when this testimony is weighed with the overwhelming proof of defendant's guilt. *Chapman v. California* (1967), 386 U.S. 18 and *Harrington v. California* (1969), 395 U.S. 250.

Defendant also argues that the trial judge erred when he failed to strike a reference to defendant's involvement in "other crimes." During the cross-examination of Officer Hardiman, defense counsel asked him whether he had known defendant before the night of the rock throwing incident. The following colloquy occurred:

"MR. DIRKSEN: Q. You stated that you knew the defendant before this particular night?

A. Yes, sir, I did.

Q. Under what circumstances did you know him?

A. He was involved in an investigation that was entirely disconnected from this mob action thing. It was his regard to stolen [sic]."

The narrative ended after the word "stolen." No objection or motion to strike was made.

■■ Also on cross-examination of that officer and in response to defense counsel's questioning, the following colloquy occurred:

"Q. Did you uncover in your investigation that William DeKosta was not a member of any of these groups?

A. I never said that he was.

Q. Isn't it a fact that you didn't uncover anything about him? That he belonged to no group. He had broken no laws. He had done no wrong?

A. I would say it was nothing we could prove and arrest him for. We had trouble getting witnesses to testify against him."

No objection or motion to strike was made. The failure to make a proper and timely objection to the admission of evidence, or to move to strike it out after its admission, constitutes a waiver of the right to argue these points for the first time on appeal. *People v. Trefonas,* 9 Ill.2d 92.

■■ Additionally, this evidence and other evidence now objected to was induced by defendant's interrogation.

■■ Defendant next claims that the cross-examination of his character witnesses was improper. We have carefully reviewed the record and we have found that the defendant made no objection to the introduction of any of the evidence on which this argument is based. Therefore, this point is waived. *People v. Trefonas, supra.*

■■ Finally, defendant contends that the prosecutors used improper evidence in argument to the jury. The defendant made no objection to remarks of the prosecutors during closing argument which defendant now claims were prejudicial. Accordingly the prejudice, if any, was waived. *People v. Hampton,* 44 Ill.2d 41, and *People v. Davis,* 126 Ill. App.2d 114.

Judgment affirmed.

ENGLISH, P. J., and LORENZ, J., concur.