(No. 42232.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. DENIS G. CLARKE, Appellant.

*Opinion filed November 24, 1971.—Rehearing denied Jan. 27, 1972.*

HOWARD T. SAVAGE and MAYME F. SPENCER,
both of Chicago, (HOWARD O. EDMONDS, of counsel,)
for appellant.

WILLIAM J. SCOTT, Attorney General, of Spring-
field, and EDWARD V. HANRAHAN, State's Attorney, of
Chicago, (JAMES B. ZAGEL, Assistant Attorney General,
and ROBERT A. NOVELLE and ARTHUR BELKIND,
Assistant State's Attorneys, of counsel,) for the People.

MR. JUSTICE DAVIS delivered the opinion of the court:

The defendant, Denis G. Clarke, was found guilty of the consolidated charges of burglary with intent to commit a theft, and rape, following a bench trial in the criminal court of Cook County. He was sentenced to concurrent penitentiary terms of 3 to 6 years for burglary, and 12 to 15 years for rape.

In this appeal, he contends that even though a motion to suppress the pretrial "lineup" identification evidence was granted, the court's decision was nevertheless tainted by the testimony at the hearing on the motion, and thereby his constitutional rights were violated. He further asserts that the evidence was insufficient to establish beyond a reasonable doubt that he was guilty of forcible rape. Finally, he urges that his alibi, when coupled with the weakness of the identification by the prosecuting witnesses, established a reasonable doubt as to his guilt.

The prosecutrix lived alone in a three-room apartment in Chicago. She was awakened in the early morning hours of January 16, 1969, when an individual, later identified as the defendant, came into her bedroom. She watched him for a few minutes as he picked up objects from her bureau and dresser. He then flashed a light in her eyes, and she screamed. He told her to stop screaming or he would kill her. She asked him what he wanted and he replied that he was out of gas and needed money to get to Skokie. When she said her money was in the living room, he ordered her to roll over on her side and to cross her hands behind her back. He then tied her hands, put a pillow over her head and left the room again. On his return, he made her lie on her back, partially disrobed her, got on top of her, and caused his penis to penetrate her vagina for a few minutes. He then got up, again left the room, and returned in a few moments to resume sexual intercourse with her. At this point, the prosecutrix, who still had the pillow over her head, said that she couldn't breathe, and the intruder

grabbed her by the shoulders and moved her almost to a sitting position, causing the pillow to fall from her face. At this time, the assailant was still in the process of having intercourse with her and his face was only inches from hers. He again left the room and returned to engage in a further act of intercourse. All during this period, he was talking about his prowess as a "great lover." Before the final act of intercourse, he pulled down the window shades which had been partially raised. It was then beginning to get light outside. There was also some illumination in the bedroom from a light in the living room. Before leaving, the intruder said he could not find his gloves, and would not leave until he did so. He took $10 from her purse and finally left, going out the front door.

The prosecutrix spent three or four minutes untying her hands and then went to an upstairs apartment occupied by two girl friends, to whom she related what had happened. The police were then called. The prosecutrix also told the police of the rape, burglary and theft, and described her assailant to the police as a Negro, about 5' 10" tall, medium build, who weighed about 180 pounds and was well-dressed, wearing a tie, a dark three-quarter length coat, and hat. She also noted that he spoke articulately, and with an accent not common to Negroes with whom she dealt in the Chicago area. She described his face as thin, with a receding hair-line, and with wrinkles or indentations on the cheeks. She said his skin was brown rather than black.

The prosecutrix was taken to St. Francis Hospital for examination. On the following day, the police brought three Negro men for her to view. She identified the defendant as her assailant in a small conference room. Each was asked to say, "My car is out of gas and I need money to get to Skokie." The officer conducting the lineup said nothing to the prosecutrix in regard to the identity of the three men.

At the trial, one of the girl friends, to whom the prosecutrix went after the attack, testified that she observed "bind" marks on the wrists of the prosecutrix, and verified that a description of the attacker was given to the police. The police officer, who answered the call, testified that the prosecutrix told him she had been robbed and raped, and then repeated the description given to him.

The officers who arrested the defendant testified that they first observed him, the day following the offense, in a restaurant where they were having a cup of coffee prior to going on duty; and that the restaurant was near the scene of the crime. The officers further testified that he fit the description given to them by the prosecuting witness; that they followed him after he left the restaurant and after trying for several blocks to overtake him, they lost him; that they then pursued him on foot and finally stopped him as he came out of an alley; that he was searched, found to be without weapons, and advised of his rights; that he declared, "I'm innocent"; and that he was dressed in a suit, tie, hat, and three-quarter length coat.

The defendant denied that he had committed the offenses. He stated that he left his home on the night in question about 10:30 P.M. to meet a friend in a tavern, but the friend did not appear; that at 2:00 A.M., the defendant and another man left the tavern to take a third man home because he was ill; that the defendant returned to the tavern for awhile, and then left for a coffee shop; and that he was arrested shortly thereafter. Several alibi witnesses testified to the defendant's presence at the tavern and that he left there about 4:00 A.M. Other witnesses testified as to his character.

On cross-examination the defendant stated that he was born in the West Indies, and that he had been a police officer there. A defense witness, who was an expert in dialectology, testified that the defendant spoke like a West Indian.

The main thrust of the defendant's argument relates to the lineup identification of the defendant. The defense counsel moved to suppress the identification testimony, and the motion was considered by the court as part of the trial on the merits. There is a conflict in the testimony on the question of whether the defendant was advised of his right to counsel in a lineup, and if so advised, whether it was prior or subsequent to the lineup itself. However, this is immaterial since the court ruled that the lineup testimony should be suppressed because counsel for the defendant was not present at the lineup confrontation. It is the defendant's argument that hearing the testimony of the lineup identification irrevocably tainted the court's judgment so that the order suppressing the testimony could have no real effect as it would in a jury trial.

It is a well established rule, however, that when the trial judge is the trier of facts every presumption will be accorded that he considered only admissible evidence and disregarded inadmissible evidence in reaching his conclusion. *(People v. Wallenberg, 24 Ill.2d 350, 354.)* It cannot be presumed, therefore, that the trial judge considered the evidence of the lineup identification in reaching his judgment of guilty. Moreover, there was eyewitness courtroom identification testimony by the prosecutrix based on observations other than the lineup, upon which the trial judge could properly base his decision.

The defendant also contends that the proof of force used in the attack was insufficient to establish beyond a reasonable doubt that the prosecutrix was raped against her will. He asserts that no evidence was introduced that the assailant was armed with a dangerous weapon, or overpowered the prosecutrix by brute strength, or that the prosecutrix was so paralyzed by fear that she could not resist.

We find that there was sufficient proof of force in this

record to support the conviction. When the prosecutrix screamed, she was threatened with death. The fact that a pillow was placed over her head, and she could neither see nor feel a weapon, did not make the threat of death any less real. Also, the failure to resist the tying of her hands was clearly the result of fear, and once her hands were tied, any resistance would have been futile. Generally, if the female has the use of her faculties and physical powers, the evidence must show such resistance as will demonstrate that the act was against her will. However, resistance is not necessary under circumstances where resistance would be futile and would endanger the life of the female, or where she is overcome by superior strength or paralyzed by fear. *(People v. Smith, 32 Ill.2d 88, 92.)* We find no merit to the defendant's contention.

Finally, the defendant urges that he has not been proved guilty beyond a reasonable doubt because the identification testimony, when considered with the defendant's alibi, is sufficient to create a reasonable doubt as to the defendant's guilt. We disagree.

The prosecutrix had ample time and opportunity, during the four acts of intercourse, to observe the defendant's face and dress, as well as his distinctive speech. Although the lighting was not good, this court has upheld identifications made under similar lighting conditions. See: *People v. Boney, 28 Ill. 2d 505, 507; People v. Harrison, 25 Ill.2d 407, 410; People v. Mack, 25 Ill.2d 416, 421.*

Furthermore, her testimony was corroborated by her girl friends, to whom she went after the attack, and the police, to whom she gave the description which resulted in the defendant's arrest. In *People v. Mack, 25 Ill.2d 416,* a case factually similar to the case at bar, we observed at page 421: "The complaining witness positively identified defendant to the police and upon trial. In view of her proximity to the defendant and her testimony as to the lighting, we cannot say that her opportunity to observe

was insufficient." Such comment is particularly applicable in the case at bar. We have often stated that positive identification by a single witness who has ample opportunity for observation is sufficient to support a conviction. *People v. Guido, 25 Ill.2d 204, 208, 209; People v. Lamphear, 6 Ill.2d 346, 356.*

While we recognize the correlative principles of law—that where the conviction of a defendant rests upon doubtful and vague identification, which does not produce an abiding conviction of guilt, it will be reversed, and that evidence of an alibi cannot be disregarded where the sole and only evidence contradicting it rests upon the identity of the defendant as the man who committed the crime *(People v. McGee, 21 Ill.2d 440, 444)*—we do not find such principles of law applicable to the facts of this case. Her detailed description of her assailant to the police officers led to defendant's arrest the next evening. Her statement concerning his accent was likewise accurate and positive. In addition, her testimony had corroboration. She made prompt complaint to her girl friends, and the police; and several witnesses, as well as photographs, confirmed her statements and testimony. Moreover, the defendant's alibi witnesses failed to place him where he claimed to be during the early morning hours of the attack. Their testimony cannot be construed as having truly established an alibi for the defendant. The last of them saw the defendant in the tavern about an hour before the prosecutrix stated the attack occurred.

We find no error in the record and, therefore, affirm the judgment of the criminal court of Cook County.

*Judgment affirmed.*