THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE EWELL, Defendant-Appellant.

(No. 71-111; ▇▇▇▇▇▇▇▇

Second District—May 22, 1972.

Ralph Ruebner and Paul Bradley, both of Defender Project, of Elgin, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, (K. Craig Peterson, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

Two issues are raised in this appeal. The first is that the evidence was

not sufficient to prove defendant's guilt beyond a reasonable doubt. The second issue relates to alleged improper statements made by the State's Attorney in final argument.

The defendant was tried by a jury for the robbery of the Pay Less Store in Rockford, Illinois, on May 2nd, 1970. On May 2nd, 1970, the defendant Willie Ewell drove one Robert Bowers to the Pay Less Store at 10:00 o'clock in the morning. Willie Ewell remained in the car. Robert Bowers entered the store and with his accomplices Dannie Styles and Junior Dotson, the store was robbed at gun point. Bowers left the store and entered the back seat of the car of Willie Ewell and was driven away. The police were apparently immediately called and Officer Axelson apprehended the two men within a few minutes after the robbery. The car was stopped by Officer Axelson with the assistance of Deputy Sheriff Etts who backed his car in front of the defendant's car. The two men were ordered from the car and the revolver used in the robbery was found in the back seat together with a pillowcase containing $3088 in cash, the proceeds of the robbery.

One of the arresting officers testified that defendant Ewell said to him "What did I do?" and the officer replied "Nothing yet."

Defendant Ewell at first made a statement to the police that he did not know Bowers and that Bowers came out of the store with the gun and forced Ewell to drive him from the scene of the robbery. Subsequently it was discovered that Bowers had Ewell's pants on with Ewell's name in the pants. When confronted with this, Ewell admitted that he did in fact know Bowers. A fireman testified that he observed the Ewell car and the license plate was covered with paper. A second witness, a high school student, also testified that he saw paper over the license plate. However, at the time of the arrest of Ewell the arresting officers did not notice any paper over the license plate.

George Peplos, the tavern owner of the Pine Tap, testified on behalf of the State that on Friday, May 1st, Willie Ewell was in the Pine Tap with Dannie Styles and Junior Dotson. He further testified that on Saturday morning prior to the robbery Ewell was in the premises at the bar between 6:30 and 7:00 o'clock. Bowers came in about 8:00 o'clock and Ewell talked to Bowers, Styles, and another party. He further testified that Dotson was there and that all four left at varying times between 8:30 and 9:00 o'clock. The robbery took place at about 10:00 o'clock in the morning. He specifically saw Ewell, Styles and Bowers talking together and they were "talking softly."

Ewell took the stand and testified in his own behalf. He admitted that he had lied to the police about knowing Bowers. He stated the only thing he said to the police at the time of arrest was "What have I done?" and

when he was taken to the police station he denied knowing Bowers but that he did so because he was on probation. He also admitted that he told the police that "I told him that this man got in my car at the store and had a gun." This conversation was in the police station. When confronted with the pants he then "changed" the statement. Ewell further stated that Bowers had given him $2.00 for gasoline to drive him to the grocery store.

Bowers testified on behalf of the defendant and advised the jury that he had been brought from the Stateville penitentiary for this purpose. He stated that he knew Willie Ewell for about a week and that Willie Ewell had loaned him a pair of trousers and a shirt. He denied having seen Ewell from the time he borrowed the clothes a few days before until the date of the "stick up." He stated that he first saw Willie Ewell on the morning of the hold-up on the street and told him that he would give him money for gasoline if he would take him to the store. He further stated that he came out of the store with a .38 caliber pistol and a sack full of money and that Ewell drove him away from the scene of the hold-up. He also admitted that the fourth man in the hold-up, Styles, had a gun in the armed robbery. He further admitted that he had talked to Styles on the morning of the robbery in the Pine Tap bar and that Willie Ewell might have been there but that he wasn't with them, and that Styles and Dotson walked to the Pay Less Store on that morning.

The defendant does not dispute the fact now that when Bowers returned to his car with a gun in his hand that he should have been aware that Bowers had committed a robbery, and further contends that he was in all probability guilty of a violation of Chapter 38, Section 31-5, Ill. Rev. Stat. in that "he aided a fugitive."

▇▇ The first argument is that the evidence against the defendant is circumstantial. It is scarcely necessary to point out that an accused may be found guilty upon circumstantial evidence, but there was direct evidence as well.

Defendant comments upon the fact that the arresting officer did not say that the license plate was covered but that the high school student and fireman thought that it was, prior to the time defendant and Bowers were apprehended by the police. Whether the license plate was covered or not was a question for the jury. The defendant further comments on the testimony of Peplos, the bar tender, and that the fact that they may have been planning a robbery was mere speculation. This may well be true, however, the testimony was of considerable probative value because the defendant first denied that he knew Bowers and further denied that he had met with Bowers in the tavern on Friday, and that while he was

in the tavern on Saturday morning that he had not talked with Bowers but that he met Bowers on the street and talked to him.

Counsel for both sides have cited *People v. Manley* (1971), 274 N.E.2d 373. Manley was a passenger in a car driven by a co-defendant together with two other co-defendants. Manley was granted a severance and tried separately. In this case there was no evidence presented as to any prior activities of the co-defendant. The court stated at 375:

"It is undisputed that defendant was not the actual perpetrator of the robbery. His guilt depends upon his accountability for the offense which took place.

\* \* \* Whether a person is accountable and guilty of the offense charged may be proved by circumstantial evidence as in other cases. Presence at the scene of an offense and flight are circumstantial evidence which may tend to prove and establish defendant's guilt. [Citation.] However, such circumstantial evidence must be considered with all of the other circumstances in determining whether defendant's guilt has been satisfactorily determined. Defendant's presence and flight are subject to explanation and in light of other circumstances their tendency to prove guilt may be diminished. [Citation.]"

The court then went on to find that in its opinion the facts in that case warranted the inference that the defendant had no prior knowledge concerning the offense and that the victim's testimony corroborated the testimony of the defendant. That is not the situation in the instant case. The jury as the trier of the fact could well consider the testimony of the State's witnesses, *viz,* that the defendant had or had not met with Bowers on either the Friday before the offense, or on the morning of the offense, or on both dates, and the defense testimony that the defendant first denied knowing Bowers, and that Bowers ran out of the store with a gun and forced him to drive from the premises. The jury could well consider the fact that the defendant changed his story contending that Bowers merely had asked him to drive to the store and had given him $2 for gasoline. All of these factual situations, and the denial of the defendant, were presented to the jury as factual questions. Whether they chose to believe the defendant and his witnesses, or whether they chose to believe the State's witnesses were questions of fact for the jury's determination.

■■■ We then turn to the question of whether or not the final argument of the State's Attorney constituted reversible error. The State's Attorney in his closing argument commented upon the fact that when the defendant was apprehended that he did not complain to the police that Ewell had forced him to drive the getaway car. The defendant contends

that the issue here is whether or not this statement raises the question of tacit admission of guilt because of silence of the defendant. The phraseology of the State's Attorney in commenting upon the defendant's statement or lack of statement was unfortunate. However, the defendant took the stand and attempted to explain what he did or did not do when Bowers entered the car. Under the circumstances it cannot be said that the State's Attorney's comment constituted reversible error. Specifically, defendant denied knowing Bowers and stated Bowers entered his car with a gun and forced him to drive him from the scene of the robbery, only when confronted with his pants, with his name on them, taken off of Bowers, did he admit knowing Bowers. When a defendant does make a statement and then changes his story, and admits this on the witness stand, the State's Attorney may obviously point this out to the jury. The closing argument in this regard did not violate defendant Ewell's constitutional right to remain silent as Ewell did not remain silent, and testified as to the facts occurring after the robbery. No objection was made to this part of prosecution's argument. We need not consider the same. As stated in *People v. Bambulas* (1969), 42 Ill.2d 419, 425, 247 N.E.2d 873:

> "The defendant's final contention is that the prosecutor's argument was prejudicial. Much of the argument now under attack was not objected to in the trial court and will not be considered here. * * * The argument was not of such a nature as to deprive the defendant of a fair trial."

■■ The State's Attorney further erroneously argued that while the State had to prove their case beyond a reasonable doubt that it was the jury's job "to decide whether or not they have raised any reasonable doubt and I submit that they have not." This statement, while inadvertent, did not constitute the shifting of the burden of proving the defendant guilty beyond a reasonable doubt which was further covered in the instructions, and by the State's Attorney when he corrected this statement in his rebuttal argument and stated:

> "Mr. Beynon has said that he is not required, or his client is not required to prove his innocence in this case, and he is quite right. And I hope I haven't said anything to the contrary. Because, this is a rule of law we operate under in this country, that a person is presumed innocent until the contrary is proven. And to me, I think it's a good rule, wouldn't have it any other way. And I accept that responsibility completely, and I think that we have satisfied that burden. And I believe that you can see from the evidence you have heard here that we have."

■■ The defense has cited *People v. Weinstein* (1966), 35 Ill.2d 467,

220 N.E.2d 432 but the instant case differs materially. In *Weinstein* the prosecutor stated on five or six occasions that the defendant must create a reasonable doubt before she could be acquitted. No objection was made to these statements. Finally, in *Weinstein,* seventeen objections were made and sustained to the prosecution's argument. It is to be noted no objection was made to the original statement of the State's Attorney and it may be deemed to have been waived. *People v. Carter* (1968), 39 Ill.2d 31, 39, 233 N.E.2d 393.

Defendant further argues that the trial court erred in failing to sustain three objections made as to the prosecution's final argument. The objections were to the comment of the State's Attorney that the law considered Bowers' testimony less believable because of his prior convictions than that of other witnesses, and that secondly, the State's Attorney again commented unfavorably on Bowers' testimony over objection. While the Judge did not sustain the objections, in both instances the court stated that there would be an instruction as to this issue. Lastly, the State's Attorney commented again on Bowers' reputation in the penitentiary and to his testimony on behalf of the defendant. Objection was made and the court advised the State's Attorney his comments were unfortunate, poorly chosen statements, and they should not have been made.

██ In the instant case we believe that regardless of the improper remarks of the State's Attorney in his closing argument, the defendant was found guilty beyond a reasonable doubt. As the Supreme Court stated in *People v. Naujokas* (1962), 25 Ill.2d 32 at 38:

"From a review of the record we are of the opinion that the defendant was proved guilty beyond a reasonable doubt of the crime of robbery, and that the errors commited during the trial, did not prejudice the defendant. \* \* \*"

and in *People v. Koshiol* (1970), 45 Ill.2d 573, 262 N.E.2d 446, at page 580:

"Finally, we find that the prosecutor's final argument to the jury was not prejudicial to the defendant. While certain remarks may have been improper, though unobjected to in the trial court, nevertheless, in view of the clear and convincing evidence of the guilt of defendant we do not believe that the remarks could have influenced the result, or that the verdict could have been otherwise had the statements not been made. [Citation]."

See also *U.S. v. Karigiannis* (7 Cir. 1970), 430 F.2d 138, *cert.* den. (1970), *Panagiotopoulos v. U.S.,* 400 U.S. 904, 91 S.Ct. 143, 27 L.Ed.2d 141.

██ The above questions as to the State's Attorney's closing argument were not raised in the post trial motion and they are therefore not technically preserved for appeal. (*People v. Greer* (1964), 30 Ill.2d 415, 417, 197 N.E.2d 22; *People v. Irwin* (1965), 32 Ill.2d 441, 443, 207 N.E.2d 76.)

In *People v. Gratton* (1963), 28 Ill.2d 450, 454, 192 N.E.2d 903 the court stated:

"* * * Where the grounds for a new trial are stated in writing, the accused is limited on review to the errors alleged therein and all other errors are deemed to have been waived. [Citations.]"

We do not believe that these irregularities were so prejudicial as to deprive the defendant of a fair trial.

In the instant case the defendant was apprehended shortly after the armed robbery; the admitted robber was in his car together with the gun and the loot, and he had met with Bowers and one or two of the robbers early in the morning prior to the robbery. Bowers and the defendant came to the scene together and the other two went separately. The three went into the store as planned and defendant remained in the car parked in a parking area. We believe that the evidence here is more than sufficient as to defendant's guilt and is such that the jury could not reasonably reach a verdict other than guilty in a new trial.

Judgment affirmed.

ABRAHAMSON and T. MORAN, JJ., concur.