THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES COOK, Defendant-Appellant.

First District (3rd Division)    No. 60501

Opinion filed August 19, 1976.

Michael J. Goldstein, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Nell Minow and Linda Ann Miller, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Defendant was indicted for the offenses of rape, armed robbery, and deviate sexual assault (Ill. Rev. Stat. 1971, ch. 38, pars. 11—1(a), 18—2, and 11—3). Following a jury trial, verdicts of guilty were returned as to each offense and judgments of conviction were entered. Defendant was then sentenced to a single term of 10 to 30 years in the penitentiary.

On appeal defendant contends that (1) his identification was insufficient to establish his guilt beyond a reasonable doubt; (2) prejudicial trial errors contributed to the guilty verdict in the improper (a) prosecutor's remarks in opening argument, (b) attempted cross-examination of an alibi witness, (c) cross-examination of a reputation witness, (d) cross-examination of defendant as to prior arrest, and (e) prosecutor's comments on the law in two instances in closing argument; and (3) the sentence imposed was excessive.

We affirm the judgments of conviction and remand with directions as to sentencing. The pertinent facts follow.

At trial the complaining witness testified. At approximately 6:30 a.m. on February 21, 1972, she was on her way to work. While walking from her home to a bus stop at 70th Street and Jeffrey Boulevard, in Chicago, a man whom she identified at trial as defendant crossed from the opposite side of the street. He grabbed her by the arm, showed her a knife concealed in a newspaper, and told her not to scream. He took her across the street and into the hallway of a building where he demanded money. She gave him $15 from her purse. He then took her up to a stairway landing and ordered her to remove her coat and the lower part of her clothing, after which he placed his mouth on her vagina for about five minutes then had sexual intercourse with her. When he left she ran home and called the police. She gave them a description of the assailant as a black male, 20 to 30 years old, between 5'4" and 5'6" in height, 150 pounds in weight, short hair, slight mustache, medium brown complexion, and wearing red corduroy pants and a brown tweed jacket. After being examined at a hospital the complainant was shown photographs at the police station but did not identify any of them. On March 20, 1972, at approximately 7:30 p.m., she and her husband were sitting in a parked car at the intersection of 71st Street and Jeffrey Boulevard when she recognized the defendant walking on the street. Her husband hailed a police car and defendant was arrested.

On cross-examination the victim testified to the following. When defendant first approached her on the street it was daylight; also, there was a light at the top of the stairway landing. The entire incident involved an estimated 20 minutes. She could not recall ever having described her assailant to the police as being 20 to 27 years old. Although he was wearing red pants and a brown tweed jacket at the time of his arrest, the

similarity of the clothing to that worn by her assailant did not influence her identification of defendant on March 20. She would be able to identify the front door of the building where the attack took place. The door was of solid wood without any windows. A photograph exhibited to her accurately portrayed the building and the door, except that the door in the photograph had a window in it.

Officer Donald Mitchell of the Chicago Police Department testified. On February 21, 1972, he investigated the instant attack. The complainant described her assailant as being 20 to 27 years old. To his knowledge, he recorded each detail of her description and did not record one of weight.

Officer Garth Angel of the Chicago Police Department testified. He arrested defendant on March 20, 1972. At that time defendant was wearing red pants and a light brown coat. In his opinion, defendant's complexion was medium brown.

Evon Riley testified for defendant. He resided with her and her three children at 7126 South Bennett Avenue, in Chicago. On February 21, 1972, he did not go to work because he had flu and was home between 6 and 8 a.m. on that date. She had known the defendant for 13 years, and his reputation in the community was that of a peaceful, law-abiding citizen. On cross-examination the prosecutor repeatedly attempted to question the witness as to when she had first learned of defendant's arrest on the charges. The trial court sustained defense's objections to this inquiry on the basis that the prosecutor admitted he was not prepared to introduce evidence to refute any response thereto.

Phillip Jones testified. He had known defendant for 12 years, and his reputation in the community is one of a peaceful, nonviolent person. On cross-examination Jones stated that he did not know defendant's whereabouts between the hours of 6 and 8 a.m. on February 21, 1972.

Frands Giordani and Eddy Johnson each testified; they had known defendant for 5 and 15 years respectively, and his reputation in the community is that of a peaceful, law-abiding citizen.

Defendant testified in his own behalf. It was stipulated that he was 31 years of age. He denied robbing and attacking Patricia Watkins. He did not awaken on the morning of February 21, 1972, until 8 or 9 o'clock. Although it was a legal holiday, defendant was scheduled to work but remained at home because he was ill with flu. Defendant is 5'8" in height and weighs 135 pounds. His only prior arrest was in connection with a gambling raid when no formal charge was placed against him. On cross-examination he was asked and denied that he had once been arrested as a patron of a house of prostitution. After his response an objection to that inquiry was sustained by the trial court.

Albert Brooks testified for defendant. He has been the janitor at the building at 7002 South Chappel in Chicago for 5 years; he identified that

building as the one in the photograph shown to the complaining witness. On February 21, 1972, the front door of that building was the same as it appeared in the photograph, with a glass window in it.

In opening argument the prosecutor stated to the jury, without objection, that unlike a repealed Illinois doctrine whereby a dog owner cannot incur liability for a dogbite unless he has notice of the animal's biting propensities, defendant does not have a license to commit one rape because he is a nice fellow. In closing, the prosecutor stated to the jury that the testimony of the complaining witness was sufficient to convict defendant if it was accepted by them. On objection by defendant the trial court stated that it would instruct the jury. The prosecutor then argued, without objection, that the jury would be instructed that if all the evidence convinced them beyond a reasonable doubt of defendant's guilt, they must return guilty verdicts despite evidence of defendant's good reputation.

After deliberation the jury returned verdicts of guilty on each offense charged. At the conclusion of a hearing in aggravation and mitigation defendant was sentenced to a term of 10 to 30 years in the State penitentiary.

Initially, defendant contends that the identification testimony of the complaining witness was insufficient to establish his guilt beyond a reasonable doubt. He argues that discrepancies existed between her description of the assailant and defendant's actual characteristics; that the lighting conditions under which the attack took place and the circumstances under which the complaining witness identified defendant on the street one month later are suspect; that her recollection was impeached by her inability to recall the physical detail of the building where the attack occurred; and that defendant's alibi and reputation testimony stood unimpeached.

A conviction which rests upon identification testimony that is vague, uncertain and doubtful cannot be permitted to stand. *(People v. Cullotta* (1965), 32 Ill. 2d 502, 207 N.E.2d 444; *People v. Cook* (1969), 113 Ill. App. 2d 231, 252 N.E.2d 29.) However, minor discrepancies in a witness' testimony do not necessarily render invalid an identification by that witness but rather, go to the weight to be afforded such testimony by the trier of fact. *(People v. Bergeron* (1973), 10 Ill. App. 3d 762, 295 N.E.2d 228; *People v. Bennett* (1973), 9 Ill. App. 3d 1021, 293 N.E.2d 687.) The accuracy of an identification and the weight to be given it are matters for the jury; a reviewing court will not disturb such determination unless the evidence is so unsatisfactory as to leave a reasonable doubt of the accused's guilt. *People v. Oparka* (1967), 85 Ill. App. 2d 33, 228 N.E.2d 291.

A review of the instant record establishes that the discrepancies in the

testimony of the complaining witness were of a minor nature. The physical description she gave to the police after the attack conforms in large measure to defendant's actual appearance. She testified that defendant approached her in daylight, and that the stairway landing where the attack occurred was illuminated. She estimated that the entire incident took 20 minutes, and she therefore had more than sufficient opportunity to observe her assailant at close quarters. As stated in *People v. Ervine* (1965), 64 Ill. App. 2d 82, 87-88, 212 N.E.2d 346:

> "Ordinarily all features are viewed at once and the recognition made instantaneously or not at all. This is one of the reasons why minor discrepancies in identification do not require reversal. People v. Boney, 28 Ill. 2d 505, 509, 192 N.E.2d 920; People v. Prochut, 27 Ill. 2d 298, 300, 189 N.E.2d 290. The essentials were present in the victim's opportunity to observe, and her positive identification, the sufficiency of the recognition being a question of fact for the trial court. People v. Reed, 27 Ill. 2d 342, 343, 189 N.E.2d 253; People v. Washington, 26 Ill. 2d 207, 210, 186 N.E.2d 259."

■■ The circumstances of the complaining witness' identification of defendant on the street one month after the incident also presented only a question of fact to be weighed by the jury. Her recollection was not seriously undermined by her inability to recall whether the door of the building where the attack occurred had a window in it or not. Once again, a minor detail such as this goes only to the weight to be afforded her testimony. (*People v. Bergeron.*) Moreover, the alibi and reputation testimony presented by the defense did not compel a different finding by the jury. If clear and convincing, the testimony of a single witness is sufficient to convict, even though it is contradicted by the accused or an alibi is offered. (*People v. Clarke* (1971), 50 Ill. 2d 104, 277 N.E.2d 866; *People v. Hanserd* (1970), 125 Ill. App. 2d 465, 261 N.E.2d 317.) Here the jury obviously credited the testimony of the complaining witness over that of defendant and his witnesses. On this record it cannot be said that the jury's determination as to either the weight of the witnesses' testimony or their respective credibility was manifestly erroneous. We hold that the identification of the defendant was sufficient to establish his guilt beyond a reasonable doubt.

■■ Defendant next contends that certain prejudicial trial errors contributed to the return of guilty verdicts by the jury. In all, six separate trial errors are asserted by defendant. First, he argues that he was prejudiced by the opening argument of the prosecutor which likened him to a dog. Even if defendant's characterization of the prosecutor's remarks is correct, those comments would not fall outside the scope of fair comment. (*People v. Welton* (1968), 96 Ill. App. 2d 167, 238 N.E.2d 141.)

We feel, however, that defendant has misconstrued the remarks. It appears that the prosecutor's argument was not meant as a disparagement of defendant, rather as an analogy of his criminal liability to that of the civil liability of a dog owner for a dogbite; that is, as an illustration to the jury that defendant's good reputation was not exculpatory. Also, defendant made no objection to these remarks and has not preserved the question for review. *People v. Hampton* (1969), 44 Ill. 2d 41, 253 N.E.2d 385; *People v. Ewell* (1972), 5 Ill. App. 3d 443, 283 N.E.2d 497.

■■ Second, defendant argues that by the attempted cross-examination of Evon Riley, his alibi witness, concerning when she had learned of defendant's arrest, the prosecutor sought to bring before the jury facts which could not be proved at trial. Defendant asserts that the prosecutor tried to cast doubt on Riley and her alibi testimony by implying that her alibi testimony was fabricated after defendant's arrest. The prosecutor asked four questions as to when and from whom she had learned of the arrest. On each question a defense objection to its materiality was sustained by the trial court. The witness answered none of the questions. Unlike *People v. Bush* (1921), 300 Ill. 532, 133 N.E. 201, cited by defendant, these questions were not so obviously incompetent as to give rise to the conclusion that they were posed solely to prejudice defendant. In promptly sustaining the objections of defendant the trial court cured any error in the questions being asked.

■■ Third, defendant argues that Phillip Jones, one of his reputation witnesses, was improperly asked on cross-examination if he knew of defendant's whereabouts at the time of the offenses. The relevancy of this question escapes this court. Similarly, we do not see how this witness' negative response to that question could possibly prejudice defendant. Furthermore, defendant made no objection to the witness' answer, and any error there involved has not been preserved for review. *People v. De Kosta* (1971), 132 Ill. App. 2d 691, 270 N.E.2d 475.

■■ Fourth, defendant argues that he was improperly cross-examined by the prosecutor concerning an alleged prior arrest. The prosecutor asked defendant if he had once been arrested as a patron of a house of prostitution and defendant stated he had not. Defense counsel's objection to the question was sustained by the trial court. It is usually improper to cross-examine an accused as to his previous conviction of a crime. (*People v. Flynn* (1956), 8 Ill. 2d 116, 133 N.E.2d 257.) Here, however, defendant had testified on direct examination that his only prior arrest was in connection with a gambling raid. We believe that by such direct testimony defendant opened the door to inquiry as to his prior arrests, and he cannot be permitted to complain as to that portion of his cross-examination which he himself opened to legitimate inquiry. *People v. Nastasio* (1963), 30 Ill. 2d 51, 195 N.E.2d 144, *cert. denied,* 377 U.S. 911,

12 L. Ed. 2d 181, 84 S. Ct. 1173; *People v. Petty* (1972), 3 Ill. App. 3d 951, 279 N.E.2d 509.

■■ Fifth, defendant argues that the prosecutor improperly commented on the law in closing argument when he stated to the jury that the testimony of the complaining witness was sufficient to convict defendant if accepted by the jury. On objection by defendant the trial court stated that it would instruct the jury. Improper closing argument is not grounds for a reversal unless it operates to the substantial prejudice of an accused. (*People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432, *cert. denied*, 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881.) It cannot be concluded that defendant was substantially prejudiced by these remarks of the prosecutor in that they were correct expressions of the law. (See *People v. Clarke* (1971), 50 Ill. 2d 104, 277 N.E.2d 866.) Additionally, any error involved in such remarks was cured by the cautionary statement of the trial court.

■■ Sixth, defendant again argues that the prosecutor improperly commented on the law in closing argument in stating to the jury that they must return guilty verdicts despite evidence of defendant's good reputation if all the evidence convinces them of his guilt beyond a reasonable doubt. Defendant failed to object to this remark by the prosecutor and therefore has not preserved the question for review. *People v. Hampton* (1969), 44 Ill. 2d 41, 253 N.E.2d 385; *People v. Ewell* (1972), 5 Ill. App. 3d 443, 283 N.E.2d 497.

Finally, defendant contends that the sentence imposed was excessive. Judgments of conviction were entered on each of the three guilty verdicts returned by the jury. A single penitentiary sentence of 10 to 30 years was imposed by the trial court. The offenses of rape, armed robbery, and deviate sexual assault are all classified as Class 1 felonies. (Ill. Rev. Stat. 1972, ch. 38, pars. 11—1(c), 18—2(b), and 11—3(b).) Under the Unified Code of Corrections, the maximum term for a Class 1 felony is any term in excess of 4 years, and the minimum term is 4 years unless the trial court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term. (Ill. Rev. Stat. 1973, ch. 38, pars. 1005—8—1(b)(2), 1005—8—1(c)(2).) Thus, the sentence imposed by the trial court is within the limits set by the legislature. Nonetheless, defendant asks this court to consider his lack of criminal record and background and to exercise its authority under Supreme Court Rule 615(b)(4) to reduce the sentence in the interest of promoting his rehabilitation. Ill. Rev. Stat. 1975, ch. 110A, par. 615(b)(4).

■■ The background of a defendant and his lack of prior criminal record are proper factors for consideration when a reviewing court is asked to reduce a sentence. (*People v. Browry* (1972), 8 Ill. App. 3d 599,

290 N.E.2d 650.) However, they are not the only factors that determine an appropriate sentence. As stated in *People v. Taylor* (1965), 33 Ill. 2d 417, 424, 211 N.E.2d 673:

> "We believe that under the now applicable statute granting reviewing courts the power to reduce sentences imposed by the trial courts where circumstances warrant [citation], such authority should be applied with considerable caution and circumspection, for the trial judge ordinarily has a superior opportunity in the course of the trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed than do the appellate tribunals."

At the conclusion of the hearing in aggravation and mitigation in the instant case, the trial court stated in pronouncing sentence:

> "As far as I am concerned, the type of crime that you have committed, the type of rape that you committed, the armed robbery, taking a complete stranger off the street, terrorizing her, is probably as serious a crime short of murder that we have on the statute books."

The violent nature of the offenses obviously weighed heavily in the trial court's determination of an appropriate sentence. In light of the fact that defendant was convicted of three separate and distinct Class 1 felonies, we cannot say that his conduct prior to the offenses was of such mitigating influence that it rendered the sentence imposed by the trial court violative of the constitutional mandate that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, §11.) We therefore decline to exercise our authority to reduce defendant's sentence.

However, our review of the instant record indicates that although judgments of conviction were entered for each of the three offenses on which the jury returned guilty verdicts, the trial court ostensibly imposed only a single sentence on defendant. The only indication of record that multiple sentences were intended by the trial court is a statement in defendant's Notice of Appeal that concurrent sentences were imposed. The trial transcript reflects that only a single sentence was imposed. This court was recently presented with an identical question in *People v. Robinson* (1976), 41 Ill. App. 3d 536, 354 N.E. 2d 117. There, judgments of conviction were entered against defendant as to three separate counts of armed robbery relating to three separate victims. The record, however, was silent as to whether the pronounced sentence of 3 to 5 years was one sentence on one unspecified count or three concurrent sentences as to all the counts. In affirming the judgments of conviction but remanding the

cause for clarificaton as to which count or counts sentence was imposed, this court stated at length:

"A sentence should be so complete as not to require construction by the court to ascertain its import, and so complete that it will not be necessary for a nonjudicial or ministerial officer to supplement the written words to ascertain its meaning. (*People v. Walton* (1969), 118 Ill. App. 2d 324, 254 N.E.2d 190.) In a criminal case a final judgment consists of an adjudication of guilt and an imposition of sentence (Ill. Rev. Stat. 1975, ch. 38, par. 1005—1—12; *People v. Mayhew* (1974), 18 Ill. App. 3d 483, 309 N.E.2d 672; *People v. Tomer* (1973), 15 Ill. App. 3d 309, 304 N.E.2d 129), and in the absence of a sentence, a judgment of conviction is not final and normally cannot be reviewed (*People ex rel. Filkin v. Flessner* (1971), 48 Ill. 2d 54, 268 N.E.2d 376). However, here, at least one final judgment must be considered as entered inasmuch as sentence was imposed. Since there is a final judgment which is a proper subject of review, this court has authority under Supreme Court Rule 366 to deal with any incomplete judgment which may also be involved in the case. Ill. Rev. Stat. 1975, ch. 110A, par. 366; *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1; *People v. Mayhew.*

The instant record on appeal is silent and neither confirms nor negates whether a single or multiple sentence was imposed. This is distinguishable from *People v. Harrison* (1969 abst.) 118 Ill. App. 2d 135, 254 N.E.2d 848, where following a conviction for rape and armed robbery, the trial court stated, ' * * * on the finding of guilty to both counts here, I sentence you to the Illinois State Penitentiary for a term of not less than five nor more than eight years.' This court there held that from the language used, 'on the finding of guilty to both counts here,' it was clear that the defendant was properly sentenced to five to eight years on the two charges to run concurrently. However, we are unable to determine from the instant record whether the sentence was imposed on each of the armed robberies in counts 2, 3 and 4, to be served concurrently as in *Walker,* and if not, on which count or counts imposed or not imposed. If sentence has not been imposed as to any of counts 2, 3 and 4, the conviction as to such count or counts is to be vacated as an incomplete judgment. *People v. Lilly.*"

Similarly, in the instant case, we cannot rely upon either the transcript of the trial or the statement contained in defendant's notice of appeal to establish conclusively whether defendant received a single sentence for one unspecified offense or three concurrent sentences.

■■ For the foregoing reasons, the judgments of conviction are

affirmed and the cause is remanded to the Circuit Court of Cook County with directions for further proceedings not inconsistent with this opinion, to clarify and make definite the judgment or judgments of conviction upon which sentence was imposed, whether concurrent if applicable, and to vacate the judgment or judgments of conviction, if any, upon which no sentence was imposed. An amended mittimus shall thereupon be ordered.

Affirmed in part; remanded in part with directions.

DEMPSEY and McNAMARA, JJ., concur.