(No. 97804.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. GREGORY COLLINS, Appellee.

*Opinion filed February 3, 2005.*

208

Lisa Madigan, Attorney General, of Springfield, and

Richard A. Devine, State's Attorney, of Chicago (Linda D. Woloshin, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, Alan J. Spellberg, Sheri Dietz and Annette Collins, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Robert M. Stephenson, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

JUSTICE FITZGERALD delivered the opinion of the court:

Following a bench trial, defendant was convicted in the circuit court of Cook County of reckless discharge of a firearm. 720 ILCS 5/24—1.5 (West 2002). The appellate court reversed defendant's conviction because it found that the State had failed to prove his guilt beyond a reasonable doubt. No. 1—02—2704 (unpublished order under Supreme Court Rule 23). We granted the State's petition for leave to appeal (177 Ill. 2d R. 315) to consider whether the evidence presented at trial demonstrated that defendant endangered the bodily safety of an individual when he fired a 9-millimeter, semiautomatic handgun numerous times into the air. For the reasons that follow, we reverse the judgment of the appellate court.

## BACKGROUND

On January 1, 2002, at 1:24 a.m., Chicago police officers Svec and Dowling were patrolling the area of 58th Street and Winchester when they heard multiple guns firing an uncountable number of shots. Officer Dowling turned the car into an alley west of 58th Street and drove slowly north towards the sound of the shooting. While driving, the officers continued to hear gunshots. As the car approached 5726 South Winchester the officers observed three men standing in the backyard and the

flashes of two guns being fired in the air. One man was firing a 9-millimeter, semiautomatic handgun, and the other an AK-47 rifle. A third man was also holding an AK-47, but was not firing it. Officer Dowling stopped the car at the house next door, 25 to 30 feet away from where the men stood firing the weapons.

Officers Svec and Dowling then exited their car and approached the backyard. As they walked, Officer Svec heard at least 15 more gunshots. When the officers identified themselves to the men, all three men looked in their direction and then fled into the house at 5726 South Winchester. The officers chased, and apprehended the men inside the house. Defendant, Gregory Collins, was apprehended holding a 9-millimeter, semiautomatic handgun that was loaded with 18 live rounds. After arresting the men, the officers recovered spent casings from the backyard of the home. Officer Svec testified that she observed over 60 spent casings on the ground. Officer Svec learned that defendant lived at the house, and that the other two men, Corey Brownlee and Ronald Thigpen, were defendant's neighbors. Brownlee lived nearby at 5644 South Winchester, and Thigpen next door at 5724 South Winchester. The officers also discovered two women inside defendant's house at the time of the arrests. Thigpen identified one woman as his girlfriend and the other as defendant's girlfriend. Officer Svec testified that defendant informed them that he had been "shooting off in the air" to celebrate New Year's Eve.

Defendant was indicted on two counts of aggravated unlawful use of a weapon (720 ILCS 5/24—1.6(a)(1), (a)(3)(A) (West 2002)) and two counts of reckless discharge of a weapon (720 ILCS 5/24—1.5 (West 2002)). To support the indictment, the State presented the testimony of Officer Svec. Following Officer Svec's testimony, defendant moved for a judgment of acquittal on all counts. The trial court granted defendant's motion on

the two counts of aggravated discharge of a firearm and denied the motion with regard to reckless discharge of a firearm. Defendant did not testify on his own behalf and did not call any witnesses. His codefendants, Brownlee and Thigpen, both testified and denied that they had been firing weapons in the backyard. The trial court merged both counts of reckless discharge of a firearm and found defendant guilty. The trial court denied defendant's motion for a new trial and sentenced him to 24 months' probation and 3 months' home confinement.

Defendant appealed, and the appellate court reversed defendant's conviction, holding that the State failed to prove defendant guilty beyond a reasonable doubt because it "failed to present any evidence that the bullets fired from defendant's weapon presented a danger to an individual." No. 1—02—2704 (unpublished order under Supreme Court Rule 23). We allowed the State's petition for leave to appeal. 177 Ill. 2d R. 315.

## ANALYSIS

Defendant was convicted of reckless discharge of a firearm. The applicable portion of the Criminal Code of 1961 provides:

"A person commits reckless discharge of a firearm by discharging a firearm in a reckless manner which endangers the bodily safety of an individual." 720 ILCS 5/24—1.5 (West 2002).

A plain reading of the statute reveals that the offense is two-pronged. A person commits the offense of reckless discharge of a firearm when he (1) recklessly discharges a firearm, and (2) endangers the bodily safety of an individual. Here, the parties agree that the State satisfied the first element of the offense. On January 1, 2002, defendant recklessly discharged a firearm. Defendant, however, argues that the State did not satisfy the second prong. He maintains that he did not endanger the bodily safety of an individual. He argues that endanger in the

statute means "actual endangerment," and that his conduct did not rise to the level of actual endangerment. Defendant additionally maintains that the evidence presented at trial did not demonstrate beyond a reasonable doubt that his reckless conduct actually endangered an individual.

Turning to defendant's first argument, that his reckless act did not "endanger" the bodily safety of an individual as contemplated by the statute, defendant maintains that in order to establish "endangerment" it is not sufficient to simply present evidence that an individual was present or nearby when defendant discharged his firearm. Rather, defendant maintains that to establish endangerment the evidence must show that an individual was exposed to and in the vicinity of actual falling bullets. Put another way, defendant maintains that "*might* have been endangered" is not enough, but rather the State must establish that an individual was "*actually* endangered."

The appellate court agreed. "While the State is most likely correct that firing a weapon into the air, especially in the manner in which the defendants did here, constitutes an inherent danger to individuals present in the surrounding area, it is still incumbent upon the State to prove at trial beyond a reasonable doubt that an individual's bodily safety was actually endangered ***." No. 1—02—2704 (unpublished order under Supreme Court Rule 23). The appellate court commented upon the absence of evidence depicting the angle or direction defendant fired the weapon and the lack of evidence concerning the force or velocity of bullets as they fall toward the ground. According to the appellate court, equally absent was evidence "concerning what type of area surrounded defendant's property," and whether the shooting occurred in a residential area. Finally, the appellate court criticized the State for "never question[ing]

Officer Svec as to whether she felt that her bodily safety was endangered." Simply put, the appellate court found that there was no evidence that an individual was actually endangered by falling bullets and, thus, there was insufficient evidence to establish the offense of reckless discharge of a firearm.

In order to address this issue, we must examine the language of the statute to determine the meaning of "endangerment." Because the construction of a statute is a question of law, the standard of review is *de novo*. *People v. Harris*, 203 Ill. 2d 111, 116 (2003). In construing a statute, our primary objective is to give effect to the intention of the legislature. *People v. Cyrns*, 203 Ill. 2d 264, 279 (2003); *People v. Glisson*, 202 Ill. 2d 499, 504 (2002). To ascertain the legislature's intent, "we may properly consider not only the language of the statute, but also the purpose and necessity for the law, and evils sought to be remedied, and goals to be achieved." *Cyrns*, 203 Ill. 2d at 280. Courts must first examine the words of the statute; the language of the statute is the best indication of legislative intent. *Cyrns*, 203 Ill. 2d at 279. Where the language is plain and unambiguous we must apply the statute without resort to further aids of statutory construction. *Glisson*, 202 Ill. 2d at 504-05; *People ex rel. Devine v. $30,700.00 United States Currency*, 199 Ill. 2d 142, 150-51 (2002). Where statutory language is ambiguous, however, we may consider other extrinsic aids for construction, such as legislative history and transcripts of legislative debates, to resolve the ambiguity. *People v. Whitney*, 188 Ill. 2d 91, 97-98 (1999).

The statute provides that an individual's reckless conduct must "endanger[ ]" the bodily safety of an individual. The statute does not define endanger. More importantly, the statute does not contain qualifying language such as *might* or *actually*. To endanger means "to bring into danger or peril of probable harm or loss"

or "to create a dangerous situation." Webster's Third New International Dictionary 748 (1996). Thus, by its plain meaning, the term refers to a potential or possibility of injury. The term does not refer to conduct that will result or actually results in harm, but rather to conduct that could or might result in harm. Well-established principles of statutory construction compel that we give effect to this plain meaning. Thus, in order to satisfy the element of "endangerment" contained in the statute, the State must establish that a defendant's reckless conduct created a dangerous situation—such that an individual was in peril of probable harm or loss.

We further note that, in construing a statute, we presume that the legislature did not intend an absurd result. *Hall v. Henn*, 208 Ill. 2d 325, 330 (2003); *Cyrns*, 203 Ill. 2d at 280; *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 40 (2001); *Mid-South Chemical Corp. v. Carpentier*, 14 Ill. 2d 514, 520 (1958). Defendant's interpretation of the reckless discharge of a firearm statute renders such an absurd result. Section 24—1.2 of the Criminal Code defines the related offense of aggravated discharge of a firearm. It provides in relevant part that "[a] person commits aggravated discharge of a firearm when he or she knowingly or intentionally *** [d]ischarges a firearm in the direction of another person." 720 ILCS 5/24—1.2 (West 2002). The offense thus requires the intentional firing of a weapon knowingly and directly at someone. See *People v. Ruiz*, 342 Ill. App. 3d 750, 758 (2003); *People v. James*, 246 Ill. App. 3d 939, 944-45 (1993). In contrast, the offense of reckless discharge of a firearm does not by its language require discharge of a firearm in the direction of someone. See 720 ILCS 5/24—1.5 (West 2002). Yet, defendant's reading of the reckless discharge of a firearm statute, by which an individual must actually be exposed to bullets or the gun must be pointed or angled towards an individual to

satisfy the endangerment element of the statute, requires the discharge of a firearm in the direction of a person. Consequently, if we were to accept defendant's argument, we would render the offense of aggravated discharge of a firearm superfluous and unnecessary. This clearly was not the legislature's intent.

Even if we were to accept the proposition that the statute is ambiguous, legislative transcripts reveal that the mere shooting of a gun into the air is precisely the type of conduct the legislature intended to criminalize, and the type of "endangerment" the legislature intended to protect against, when it enacted the statute.

> "If, under current law, a person possesses a firearm in a motor vehicle and even shoots it up in the air while driving around, that would still ... that would be a Class A misdemeanor [reckless conduct]. If the person fires it at somebody or shoots it into a building that's occupied, under current law it would be a Class I felony because it would become aggravated discharge of a firearm. But what happens if somebody just recklessly discharges a firearm? Doesn't necessarily aim it at someone or aim it into a occupied building, *but goes around town or out in the country or wherever it is shooting off a gun recklessly, with reckless abandon?* Under current law, that would be a Class A misdemeanor [reckless conduct]. And so the Gentleman says we should have some middle ground here and call it reckless discharge of a firearm. That's what this Bill does." (Emphasis added.) 88th Ill. Gen. Assem., House Proceedings, April 22, 1993, at 210 (statements of Representative Homer).

We, therefore, reject defendant's interpretation that "endangered" means "actually endangered."

We now consider whether the State satisfied its burden of proof—whether the evidence presented at trial demonstrated beyond a reasonable doubt that defendant's reckless conduct endangered an individual. Particularly, we consider whether the evidence demonstrates that defendant's reckless conduct created a dangerous situation, such that an individual was in peril of probable

harm or loss. We review a challenge to the sufficiency of the evidence to determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Cox*, 195 Ill. 2d 378, 387 (2001), quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979). We will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt. *People v. Evans*, 209 Ill. 2d 194, 209 (2004). In reviewing the evidence, it is not the function of the court to retry the defendant, nor will we substitute our judgment for that of the trier of fact. *Evans*, 209 Ill. 2d at 209.

Defendant maintains that the State failed to establish his guilt beyond a reasonable doubt because there is no evidence that the area was populated or that the incident occurred in a residential area, there is no evidence of bullets falling near or around the officers, nor is there evidence of recovered bullets from the backyard or surrounding area. He maintains that without this evidence, the State did not establish beyond a reasonable doubt that he "endang[ered] the bodily safety of an individual." The appellate court echoed his argument in finding that, at a minimum, the State was required to present evidence concerning the type of area surrounding the shooting, the proximity of falling bullets to individuals in the area, or the angle and direction defendant was firing his weapon. No. 1—02—2704 (unpublished order under Supreme Court Rule 23). The appellate court dismissed the principle that "what goes up must come down," and instead held that the State was required to establish "with what force the bullets would or could 'come down.' "

We disagree with the appellate court that the State

was required to introduce evidence concerning the force or velocity of bullets as they fall to the ground, or the angle or direction of the discharge. The inherent danger caused by the reckless discharge of a firearm into the air, and the obvious ricochet effect that may occur when bullets fall to the ground, are matters of common sense. In this case, what inevitably came down endangered, placed individuals in peril of probable harm or loss, those in the vicinity of the discharge.

We thus examine whether the record demonstrates that an individual was in the vicinity of the discharge. The State's witness, Officer Svec, testified that she heard at least 15 shots when she and her partner approached the backyard. The discharge of that many shots in Officer Svec's presence is sufficient to establish defendant's reckless conduct "endangered an individual." Nevertheless, we note that there is sufficient evidence beyond Officer Svec's testimony. Particularly, there is evidence that other individuals were placed in danger by defendant's reckless discharge. The record documents the presence of two women inside defendant's house, defendant's two codefendants, and Officers Svec and Dowling standing 25 to 30 feet away when defendant fired his weapon in the air. We also disagree with the appellate court that there is no evidence regarding the type of area surrounding the defendant's property. There is evidence of at least four homes in proximity to the location of the shooting. Specifically, Officer Svec testified that Officer Dowling parked the car at the house next door to where the men stood. Further, codefendant's Brownlee and Thigpen were defendant's neighbors, residing at nearby 5644 South Winchester and next door at 5724 South Winchester. This evidence establishes that the shooting occurred in a residential area. For these reasons, we find that after viewing all the evidence in the light most favorable to

the prosecution, any rational trier of fact could have found defendant guilty beyond a reasonable doubt.

As a final matter, we address defendant's request for cross-relief. Defendant maintains that there was a fatal variance between the evidence presented at trial and the indictment. The indictment named Officers Svec and Dowling as the individuals who were endangered when defendant recklessly discharged his weapon into the air. At the close of the State's case, defendant sought an acquittal on the basis that the State failed to offer evidence that Officer Svec's bodily safety was endangered. The trial court denied the motion for acquittal and concluded that the naming of Officer Svec was surplusage. The trial court concluded that the State was required to demonstrate that defendant endangered the bodily safety of "anybody *** in that general area." Defendant alleges that because the indictment did not contain this charge he was unable to adequately prepare his defense.

To vitiate a trial, a variance between allegations in a complaint and proof at trial " 'must be material and be of such character as may mislead the accused in making his defense.' " *People v. Davis*, 82 Ill. 2d 534, 539 (1980), quoting *People v. Figgers*, 23 Ill. 2d 516, 518-19 (1962). Where an indictment charges all essential elements of an offense, other matters unnecessarily added may be regarded as surplusage. *People v. Simpkins*, 48 Ill. 2d 106, 111 (1971); *Figgers*, 23 Ill. 2d at 519. "More particularly, each complaint [must] state[ ] the name of the accused, the name, date and place of the offense, cite[ ] the statutory provision alleged to have been violated and set forth in the language of the statute the nature and elements of the offense charged." *Simpkins*, 48 Ill. 2d at 111; see 725 ILCS 5/111—3 (West 2002). Consistent with these principles, we find that the naming of Officers Svec and Dowling was surplusage and did not affect the validity of the complaints. Therefore, any

variance was neither material nor prejudicial to defendant.

The specific identity of the victim is not an essential element of the offense of reckless discharge of a firearm. In *People v. De Kosta*, our appellate court examined whether a named individual is an element of the related offense of reckless conduct. *People v. De Kosta*, 132 Ill. App. 2d 691, 694-95 (1971). A person commits the offense of reckless conduct when he causes bodily harm to or "endangers the bodily safety of *an individual*." (Emphasis added.) 720 ILCS 5/24—1.5 (West 2002). In *De Kosta*, the defendant argued that the indictment was insufficient because it failed to include a specifically named individual and instead charged that a "motorist" was injured by the defendant's reckless conduct. *De Kosta*, 132 Ill. App. 2d at 694. The appellate court concluded that the identify of a person is not a required element of the offense of reckless conduct. *De Kosta*, 132 Ill. App. 2d at 695. In so holding, the appellate court examined this court's decisions regarding the offenses of disorderly conduct and resisting arrest and forgery. *De Kosta*, 132 Ill. App. 2d at 694-95 (discussing *People v. Raby*, 40 Ill. 2d 392 (1968), and *People v. Crouch*, 29 Ill. 2d 485 (1963)). Like reckless conduct, in both disorderly conduct and resisting arrest and forgery, the language of the statutes does not identify a specific person intended to be harmed by the conduct. *De Kosta*, 132 Ill. App. 2d at 694-95. Yet, a defendant is adequately apprised of the nature of the offense. *De Kosta*, 132 Ill. App. 2d at 695. Specifically, a defendant is adequately apprised of the nature of the offense because the "gist of the offense" is the injury or harm to the general public, which is no more or less harmful " 'by reason of the identity of the party' " injured. *De Kosta*, 132 Ill. App. 2d at 694-95, quoting *Crouch*, 29 Ill. 2d at 488.

While in the instant case a victim was named in the

charge, the appellate court's reasoning in *De Kosta* applies. In the offense of reckless discharge of a firearm, it is not necessary that the State include the specific identity of the "individual" in the indictment. The specific identity of the individual is not necessary to apprise a defendant of the nature of the offense and, thus, the inclusion of a named individual in the indictment is mere surplusage. Here, the indictment charging defendant provided that, "on or about January 1, 2002 at and within the County of Cook, [defendant] committed the offense of reckless discharge of a firearm in that [he], discharged a firearm in a reckless manner which endangered the bodily safety of [James Dowling or Beth Svec], to wit: [he] fired a weapon into the air in proximity of [James Dowling or Beth Svec], in violation of Chapter 720 Act 5 section 24—1.5(a) of the Illinois Compiled Statutes 1991 ***." The indictment stated the name of the accused, the name, date, and place of the offense, cited the statutory provision alleged to have been violated and set forth in the language of the statute the nature and elements of the offense charged. See 725 ILCS 5/111—3 (West 2002). Clearly, defendant was apprised of the nature of the offense and able to adequately prepare his defense.

More importantly, however, we observe that any variance did not prejudice defendant. Although defendant makes a general claim that he would have presented additional evidence or cross-examined Officer Svec about the absence of other individuals in the area, this defense would not have altered the outcome of the trial. Specifically, the statute only requires that a defendant endanger the bodily safety of "an individual"—one individual. Here, the trial court concluded that defendant was guilty of the offense because "anyone in the general area" was endangered by defendant's reckless discharge of a firearm. The trial court's finding necessarily included Of-

ficer Svec as someone in the general area. Officer Svec was the State's sole witness, and her testimony at trial established that she was within 25 to 30 feet away when she observed defendant discharging his weapon into the air. Thus, while the trial court concluded that individuals other than Officer Svec were endangered, the mere endangerment of Officer Svec's bodily safety was alone sufficient to establish a violation of the statute. We reject defendant's contention that additional evidence concerning the absence of other individuals in the area at the time of the shooting would have enabled him to establish that he was not culpable.

## CONCLUSION

For the reasons discussed, we reverse the judgment of the appellate court and remand the matter to the appellate court for consideration of the remaining issues on appeal.

*Reversed and remanded.*