2019 IL App (1st) 173012-U

No. 1-17-3012

Order filed December 31, 2019

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 3772 |
| | ) | |
| PAUL ANDERSON, | ) | Honorable |
| | ) | Angela M. Petrone, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PIERCE delivered the judgment of the court.
Justices Hyman and Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We reverse defendant's conviction for delivery of cocaine where the evidence at trial showed delivery of heroin and was therefore insufficient to prove beyond a reasonable doubt that defendant delivered cocaine.

¶ 2    Following a bench trial, defendant Paul Anderson was convicted of delivery of a controlled substance (cocaine) (720 ILCS 570/401(c)(2) (West 2016)) and sentenced as a Class X offender to 10 years' imprisonment. On appeal, defendant contends the State failed to prove him guilty beyond a reasonable doubt. He also argues that the court abused its discretion by

considering an improper aggravating factor and imposing an excessive sentence. For the following reasons, we reverse defendant's conviction.

¶ 3    Defendant was charged in cases 16 CR 14043 and 16 CR 3772. The State elected to proceed on case 16 CR 3772. In that case, defendant was charged by indictment with delivery of 1 gram or more but less than 15 grams of a controlled substance, "to wit: heroin, or analog thereof" within 1,000 feet of a school (count I) and delivery of 1 gram or more but less than 15 grams of a controlled substance, "to wit: cocaine or analog thereof" (count II). Prior to trial, the State nolled count I and proceeded only on count II. After the State nolled count I, the trial court asked whether the assistant State's Attorney (ASA) needed to make any amendments to count II, and the ASA declined.

¶ 4    The record shows that the State, in its answer to discovery, tendered to the defense "police reports, transcripts, medical reports and other documents." In defendant's arrest report defendant was identified "as the individual who delivered .4 grams of heroin" to an undercover police officer. The Chicago Police Department inventory sheet described the inventory in defendant's case as two "blue tinted ziplock bags each containing white powder suspect heroin." Various "Prisoner Data Sheets" also listed defendant's charge as "mfg/del heroin/sch/pub hs."

¶ 5    At trial, Chicago police Sergeant Nichelle Fraction testified that on February 12, 2016, she was working on a team as an undercover officer in the Narcotics Unit. About 6:15 p.m., Fraction was in plain clothes in a covert vehicle near the intersection of West Gladys and South Springfield Avenues. When she reached the 3900 block of Gladys, Fraction pulled the vehicle to the curb and a man, later identified as defendant, approached her and called out "blows," which

she knew to be street terminology for heroin. Fraction had heard people use the term "blows" for heroin over 200 times.

¶ 6    Defendant was wearing black pants, a black Bulls jacket, and red shoes, which were distinctive. Fraction made eye contact with defendant. He asked her, "How many?" and she responded, "Two." There were other people on the street, and defendant was less than five feet away. After she told him she wanted two blows, defendant walked to her vehicle, handed her two blue-tinted Ziploc bags containing a white substance of suspected heroin. When he reached into her vehicle, defendant was less than a foot away from her. She could see his face. Fraction gave defendant $20 in prerecorded funds and drove away. Defendant walked back to the sidewalk. Following the transaction, Fraction radioed her team members that there was a positive purchase of suspected heroin and gave a description of the seller, which included a description of his clothing.

¶ 7    Fraction later received a radio transmission and returned to the area where she purchased the suspect heroin. There, Fraction observed defendant and identified him as the seller over the radio for her team. She identified defendant by both his face and his shoes. She kept the two bags of suspected narcotics in her control and custody until she returned to the Narcotics Division. At that time, she inventoried the bags in a heat sealed bag.

¶ 8    On cross-examination, Fraction testified the narcotics purchase took less than a minute. She acknowledged it was dark outside at the time of the transaction. Her team did not target any specific individuals, but their surveillance was set up in a high narcotics area. Fraction first noticed defendant's shoes when she approached the area and saw "the gentleman wearing the black outfit with the red shoes." The funds Fraction used to pay for the narcotics were not treated

with any chemical substance. She did not record the transaction in any way. Fraction lost sight of defendant when she drove away after the purchase. She acknowledged that defendant was detained at the time she identified him. Approximately 10 minutes had elapsed between the time she made the purchase and when she identified defendant. Fraction did not personally search defendant or recover anything from him.

¶ 9　Chicago police officer Chesna testified she was the surveillance officer on the narcotics team on the day in question. She set up surveillance on the 3900 block of West Gladys. She watched the scene for approximately 30 minutes. There was a group of unknown men at the corner of Gladys and Springfield. Chesna observed several hand-to-hand transactions with unknown individuals prior to Fraction's arrival. When Fraction arrived at the scene, an unknown person approached the covert vehicle for a few seconds and then stepped away. Chesna observed the man approach the vehicle, but she did not see anything else. Fraction then drove away, and the man walked back to the group of unknown men at the corner. He was wearing a black hoodie, a Bulls vest, black pants, and red shoes that stood out. Although it was dark out, the area was illuminated by streetlights. Chesna was approximately a half block away and did not use anything to aid her vision.

¶ 10　Chesna was in radio contact with her other team members. Fraction informed her that a narcotics transaction occurred with the man in black clothing with red shoes. Based on that communication, Chesna did not interact with the man but maintained visual contact on him until enforcement officers arrived. She witnessed enforcement officers make contact with the man and stayed on the scene until it was clear.

¶ 11     On cross-examination, Chesna testified Fraction was 15 to 20 feet from the group of men on the sidewalk while in the covert vehicle. Chesna could not recall how many men were in the group and did not notice anyone else's shoes. After Fraction drove away, Chesna maintained her surveillance of the group, and focused on the man who made contact with Fraction's car. She watched the group of men for approximately 10 minutes before enforcement officers arrived. None of the men left the group during those 10 minutes.

¶ 12     The parties stipulated that if Fraction were called, she would testify that on February 12, 2016, she recovered two blue Ziploc bags which contained a white powder, suspected heroin, which she kept within her safekeeping and control from the time of recovery until the inventory of said items. She inventoried the items pursuant to Chicago Police Department inventory procedures.

¶ 13     The parties further stipulated that if called, Illinois State Police crime lab forensic chemist Jorge Gomez would testify that the white substance from the inventory tested positive for the presence of heroin and weighed 1.01 grams.

¶ 14     After the State rested, the defense moved for a directed finding but did not argue the motion. The court denied the motion, finding the State had met its burden based on the officers' credible testimony regarding defendant's actions and the identification of defendant.

¶ 15     During closing arguments, defense counsel argued there was reasonable doubt based on Fraction's identification of defendant. Counsel noted there was no evidence that the prerecorded funds were recovered from defendant and nothing specifically tied defendant to narcotics transactions, such as other money or narcotics. Defense counsel asked the court to consider the brief period of time in which Fraction made her observations.

¶ 16    The court found the State met its burden and entered "a finding of guilty." The court found the officers' testimony credible, noting Fraction had an "excellent opportunity to observe the defendant." It further found Chesna's corroboration particularly noteworthy because she maintained surveillance of the person who engaged in the hand-to-hand transaction with Fraction.

¶ 17    The court subsequently sentenced defendant as a Class X offender to 10 years' imprisonment. Following his sentencing, the State nol-prossed the charges in case number 16 CR 14043.

¶ 18    On appeal, defendant contends the evidence was insufficient to prove beyond a reasonable doubt that he delivered cocaine. Defendant argues he was charged with delivery of cocaine, but the evidence at trial referred to heroin. Because there was no mention of cocaine at trial, defendant argues the State failed to prove him guilty of the offense charged.

¶ 19    On a challenge to the sufficiency of the evidence, we inquire " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Davison,* 233 Ill. 2d 30, 43 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In so doing, we draw all reasonable inferences in favor of the State (*Davison*, 233 Ill. 2d at 43), and we do not retry the defendant (*People v. Collins*, 106 Ill. 2d 237, 261 (1985)). The State must prove each element of an offense beyond a reasonable doubt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009).

¶ 20    As charged here, the State was required to prove defendant knowingly delivered a controlled substance, "to wit: cocaine." 720 ILCS 570/401(c)(2) (West 2016). Defendant does

not challenge that the State proved he delivered a controlled substance, but argues it was required to prove he knowingly delivered cocaine.

¶ 21    The State responds that defendant's conviction should be affirmed because the variance between the indictment and the proof at trial did not prejudice defendant in preparing his defense or expose him to double jeopardy. Where an indictment is not challenged in the trial court, appellate review is limited to deciding whether the " 'indictment apprised the defendant of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct.' " *People v. Winford*, 383 Ill. App. 3d 1, 4 (2008) (quoting *People v. Edmonds*, 325 Ill. App. 3d 439, 443 (2001)). "A variance between allegations in an indictment and proof at trial is fatal to a conviction if the variance is material and could mislead the accused in making his defense." *Id.* (citing *People v. Collins,* 214 Ill. 2d 206, 219 (2005)). An indictment must cite the statutory provision alleged to have been violated and set forth the nature and elements of the offense charged. *Id.*; 725 ILCS 5/111-3(a) (West 2016). "[O]ther matters unnecessarily added may be regarded as surplusage." *Collins,* 214 Ill. 2d at 219. We agree with defendant.

¶ 22    In resolving this issue, we find *People v. Durdin*, 312 Ill. App. 3d 4 (2000), instructive. In *Durdin,* the State charged the defendant with two counts of delivery of controlled substances. Count I of the indictment alleged he delivered less than one gram of cocaine on a public way within 1,000 feet of a public school. *Id.* at 5. Count II alleged that the defendant delivered less than 10 grams of heroin. The evidence at trial established that police recovered heroin from the defendant but there was no evidence that the defendant possessed cocaine. *Id.* The trial court found the defendant guilty of both counts. *Id.* On appeal, the defendant challenged the

sufficiency of the evidence to convict him of count I because there was no evidence he possessed cocaine as alleged in the indictment. *Id.* at 6. This court reversed the defendant's conviction for delivery of cocaine, finding there was a material variance between allegations of the indictment that the defendant possessed cocaine and the evidence at trial showing that the defendant possessed heroin. In doing so, this court explained:

> "In this case, the State failed to present any evidence that defendant knowingly delivered cocaine within 1,000 feet of a school. * * * The parties stipulated that the controlled substance at issue was heroin. * * * When finding defendant guilty of the count I, delivery of cocaine within 1,000 feet of a school, neither the parties nor the trial judge realized the discrepancy between the indictment and the trial testimony. However, the proof at trial failed to prove count I of the indictment. Moreover, the State also stipulated that the controlled substance at issue was heroin and never moved to amend count I of the indictment. Here the State was required to prove that defendant knew he was delivering cocaine. The conviction for delivery of cocaine within 1,000 feet of a school under count I cannot stand because the State did not present evidence beyond a reasonable doubt to support each element of the charge in the indictment. The State therefore failed to prove defendant guilty beyond a reasonable doubt of delivery of cocaine within 1,000 feet of a school." (Internal citations omitted.) *Id.* at 7.

¶ 23    The court in *Durdin* recognized that a variance between the offense charged and the crime proved is not fatal to the conviction unless the variance is material and it misleads the accused in making his defense or exposes him to double jeopardy, but concluded that the

variance in that case "was material because it was the controlled substance allegedly delivered, an element of the charge." *Id.*

¶ 24    Similarly, in this case, the State charged defendant with delivery of cocaine and failed to present any evidence that defendant delivered cocaine. Rather, as in *Durdin*, the evidence at trial established defendant delivered heroin. The parties stipulated that the narcotics tested positive for heroin and apparently neither the parties nor the court realized that defendant had been charged with delivery of cocaine. The record shows the State charged defendant with both delivery of heroin and delivery of cocaine. After nol-prossing the first count, the trial court gave the State an opportunity to amend the indictment, and the State declined to do so. Because the State failed to present evidence regarding the delivery of cocaine, it did not prove beyond a reasonable doubt each element of the charge in the indictment. We therefore reverse defendant's conviction for delivery of cocaine.

¶ 25    In reaching this conclusion, we are not persuaded by the State's contention that this case is analogous to *People v. Winford*, 383 Ill. App. 3d 1 (2008). In *Winford,* the State charged defendant by way of indictment with two narcotics-related offenses. Count II of the indictment charged defendant with possessing between 1 and 15 grams of a "controlled substance, to wit: cocaine" in violation of the Illinois Controlled Substances Act (Act) (720 ILCS 570/401(c)(1) (West 2004)). *Winford,* 383 Ill. App. 3d at 2. Although that charge alleged the defendant possessed cocaine, the statutory provision cited in the indictment referred to heroin. *Id.* at 4. A police officer testified he observed the defendant engaging in what he suspected to be drug transactions and arrested the defendant, who was in possession of $40 and

eight clear plastic bags of a substance which tested positive for heroin. *Id.* at 2. The trial court found defendant guilty of possession under count II. *Id.* at 2.

¶ 26    On appeal, the defendant in *Winford* argued his conviction for possession under count II should be reversed because the State failed to prove he possessed "cocaine" as alleged in the indictment. *Id.* The State argued that the indictment's reference to "cocaine" was a typographical error that should have read "heroin." *Id.* at 3. This court upheld the defendant's conviction, noting that the indictment cited the statute applicable to heroin (720 ILCS 570/401(c)(1) (West 2004)), despite alleging the defendant possessed a "controlled substance to wit: cocaine." While this created a variance between the allegations made in the indictment and the proof at trial, the court noted that a variance between allegations in an indictment and proof at trial is fatal to a conviction only if the variance is material and could mislead the accused in making his defense. *Id.* at 4 (citing *People v. Collins,* 214 Ill. 2d 206, 219 (2005)). The *Winford* court noted the variance in the indictment, "to wit: cocaine," was not material because the indictment listed the proper section of the Act for possessing heroin. *Id.* at 4-5.

¶ 27    Here, unlike in *Winford*, the charge listed in the charging document was more than just a typographical error. The indictment listed both the wrong substance and statutory provision. The record shows that the State charged defendant with delivery of cocaine in violation of section 401(c)(2) of the Act (720 ILCS 570/401(c)(2) (West 2016)), rather than section 401(c)(1), the section which refers to heroin. Under these circumstances, we find the variance between the indictment and the proof at trial was fatal to defendant's conviction.

¶ 28    In light of this finding, we need not address defendant's remaining contentions regarding his sentence.

¶ 29    For the foregoing reasons, we reverse the judgment of the circuit court of Cook County.

¶ 30    Reversed.