**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180347-U

Order filed September 18, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0347 Circuit No. 16-CF-510 |
| ANDREW B. HENRY, | ) ) ) | Honorable Clark E. Erickson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE LYTTON delivered the judgment of the court.
Justice Carter concurred in the judgment.
Justice McDade dissented.

_____

**ORDER**

¶ 1  *Held*:  The evidence was sufficient to prove defendant's guilt beyond a reasonable doubt.

¶ 2  Defendant, Andrew Henry, appeals from his convictions for unlawful delivery of a controlled substance and unlawful possession of a controlled substance. He contends the evidence was insufficient to prove that he committed these offenses. We affirm.

¶ 3  I. BACKGROUND

¶ 4   The State charged defendant with unlawful delivery of a controlled substance (720 ILCS 570/401(d) (West 2016)) and unlawful possession of a controlled substance with intent to deliver (*id.*). The cause proceeded to a jury trial.

¶ 5   Officer Kyle Jensen testified that he was a member of the Kankakee Area Metropolitan Enforcement Group (KAMEG) drug task force. On November 21, 2016, he and Officer Joseph English conducted surveillance for a controlled drug purchase. Prior to the purchase, the officers met with Peter Gladkowski. Gladkowski called defendant and made arrangements to purchase crack cocaine at a Denny's restaurant. Jensen searched Gladkowski before the purchase and confirmed he did not have any contraband or money. The officers gave Gladkowski $160 of marked bills and dropped him off at the Denny's parking lot. Jensen, English, and several other officers surveilled the location while Gladkowski met with defendant. Jensen saw a car pull into the Denny's parking lot that was registered to defendant. Gladkowski walked toward defendant's car. Shortly afterward, Jensen and English received notification that Gladkowski completed the purchase. Gladkowski gave the suspected crack cocaine to Jensen and English. The officers searched Gladkowski and found no other contraband.

¶ 6   After defendant's arrest, officers discovered two cell phones in his car. Jensen called the number that Gladkowski had used to set up the drug purchase, and one of defendant's phones rang. Additionally, currency found on defendant matched the currency the officers had given to Gladkowski.

¶ 7   Gladkowski described the drug purchase to Jensen, and Jensen wrote a statement for Gladkowski. Jensen first testified that he wrote the statement due to Gladkowski's poor penmanship. Later, on cross-examination, he stated that it was the policy of KAMEG to write the statements. Gladkowski reviewed the statement and signed it with his pseudonym "Steven Miller."

2

The statement detailed that Gladkowski called defendant and arranged to meet him in the Denny's parking lot to purchase drugs. Defendant arrived and Gladkowski entered his car. Defendant broke off several pieces of crack cocaine and gave it to Gladkowski in exchange for $160. When Gladkowski exited the car, he signaled to the officers that the drug purchase was complete. Gladkowski gave the purchased crack cocaine to the officers.

¶ 8        Jensen testified that at the time of trial, the suspected crack cocaine was "primarily powder." Jensen also noted that he was present with the State and Gladkowski at a meeting that occurred one week prior to the trial. At that time, Gladkowski described the events of November 21, 2016, consistent with his written statement.

¶ 9        Officer English testified consistently with Jensen on what he observed while surveilling Gladkowski. Following the drug purchase, English witnessed Gladkowski sign the written statement as Steven Miller. English also collected the suspected crack cocaine from Gladkowski. English weighed the substance, field tested it, packaged it, and sealed it. The State showed English an exhibit that purportedly contained the substance. English observed that it was "a little more crumbled up" as compared to when he collected it. English said that although it was difficult to see the contents of the exhibit, the substance was in the same or substantially the same condition as when he sealed it. English recognized his markings on the exhibit and noted where he initially sealed the evidence into the bag. English said the blue tape on the exhibit was not present when he placed the suspected crack cocaine into the bag, and he did not know where the tape came from.

¶ 10        Before the State called Gladkowski to testify, it notified the court that he had failed to appear. After a recess, police officers brought Gladkowski to the courtroom. Prior to the State asking any questions, Gladkowski asserted his fifth amendment right against self-incrimination and refused to testify. The court informed Gladkowski that he was not in danger of incriminating

himself and could not assert his fifth amendment right. Gladkowski then informed the court that he was "on heavy medication, psychiatric, *** and I have had a lot of alcohol on me and I do have short term memory loss about this."

¶ 11 Gladkowski testified that he was familiar with KAMEG, and knew an officer named Kyle. Gladkowski did not recall how he met Kyle and said he was not a confidential informant for KAMEG. He recalled meeting the assistant state's attorney the previous week, but he could not recall what they discussed. When asked whether he recognized a written statement signed with the name "Steven Miller," Gladkowski testified that he had never seen the statement, did not recognize the signature, and that his name was not Steven Miller. Gladkowski later indicated that he was a confidential informant, but he did not recall using the name "Steven Miller" or using that name to sign the written statement. Gladkowski further testified that he did not know why defendant had his phone number. Overall, he did not remember meeting defendant or the KAMEG officers on November 21, 2016.

¶ 12 Officer Brandon Pasel testified that he assisted with the surveillance on the controlled purchase. Pasel saw defendant's car park in the Denny's parking lot. Gladkowski then entered and remained in defendant's car for approximately one minute. Upon exiting, Gladkowski signaled that the drug purchase was complete and met with Pasel.

¶ 13 Officer Josh Schneider testified that he and Officer Michael Coash also conducted surveillance on the controlled purchase. When they received notification that the drug purchase was complete, both officers approached defendant's car to arrest him. During a search of defendant, Schneider located $160 of the marked bills the officers had given to Gladkowski for the drug purchase. The officers also found two cell phones and $1060 in cash in defendant's car.

4

¶ 14    Coash testified consistently with Schneider about his observations while conducting surveillance. While transporting defendant from the scene, Coash sat next to defendant. Defendant leaned forward several times during the trip. When defendant exited the car, Coash located a clear plastic bag in defendant's seat that contained suspected cocaine.

¶ 15    A forensic scientist testified that he received two packages related to this case from a KAMEG officer. The two packages were sealed and contained a white substance that the scientist weighed and tested. The scientist said the packages were in the same or substantially the same condition at trial as when he received them. Upon completion of testing the substances, he sealed and placed blue tape on each with the date and his initials. The substances collected from Gladkowski and the squad car tested positive for the presence of cocaine.

¶ 16    The jury found defendant guilty of the unlawful delivery of a controlled substance and unlawful possession of a controlled substance. The court sentenced him on the charge of unlawful delivery of a controlled substance to 10 years' imprisonment.

¶ 17                                II. ANALYSIS

¶ 18    On appeal, defendant argues the evidence was insufficient to prove him guilty beyond a reasonable doubt of unlawful delivery of a controlled substance and unlawful possession of a controlled substance. Specifically, defendant contends that Gladkowski's testimony did not incriminate him and was incredible, testimony from the officers was incredible, the substance collected from Gladkowski was not the same substance that later tested positive for cocaine, and the testimony from the unsentenced charge of unlawful possession of a controlled substance discredited the evidence of the sentenced charge of unlawful delivery of a controlled substance. Viewing the evidence in the light most favorable to the State, we find a rational trier of fact could have found defendant guilty of both charges.

¶ 19 When a defendant makes a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant." *Id.* Thus, "the reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). "A conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Belknap*, 2014 IL 117094, ¶ 67.

¶ 20                                   A. Evidence of the Charged Offenses

¶ 21 At the outset, we note that the State charged defendant with two offenses, unlawful delivery of a controlled substance and unlawful possession of a controlled substance. To prove the unlawful delivery of a controlled substance charge, the State was required to show defendant knowingly delivered any amount of a substance containing cocaine. 720 ILCS 570/401(d) (West 2016). To prove the unlawful possession of a controlled substance, the State was required to show defendant knowingly possessed any amount of a substance containing cocaine. *Id.* § 402(c).

¶ 22 Examining the unlawful delivery of a controlled substance charge, we find the evidence established that defendant exchanged a substance containing cocaine for $160. Specifically, Gladkowski contacted defendant and scheduled a time to purchase drugs. Officers gave him $160 in marked currency and watched as Gladkowski met with defendant. Then, Gladkowski gave the officers a substance that tested positive for cocaine. The officers who arrested defendant found $160 of the marked bills that they had previously given to Gladkowski.

6

¶ 23      Examining the unlawful possession of a controlled substance charge, we find that the evidence established that defendant possessed the substance containing cocaine that was discovered in the officers' squad car. After defendant got out of the squad car, officer Coash found a bag containing suspected cocaine in the seat where defendant was located. The substance later tested positive for the presence of cocaine.

¶ 24                             B. Witness Credibility

¶ 25      Defendant asserts that the testimony of Gladkowski and several of the officers was incredible, and therefore, failed to prove his convictions beyond a reasonable doubt. It is the responsibility of the trier of fact to "fairly*** resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences." *Jackson*, 443 U.S. at 319. "The trier of fact is best equipped to judge the credibility of witnesses, and due consideration must be given to the fact that it was the trial court and jury that saw and heard the witnesses." *People v. Wheeler*, 226 Ill. 2d 92, 114-15 (2007). "Accordingly, a jury's findings concerning credibility are entitled to great weight." *Id.* "Testimony may be found insufficient under the *Jackson* standard, but only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *Cunningham*, 212 Ill. 2d at 280.

¶ 26      Defendant first argues Gladkowski's testimony was "ridiculous" and, therefore, unreasonable for a jury to believe. At trial, Gladkowski provided conflicting testimony that he had and had not participated in the November 21, 2016, controlled drug purchase. However, Gladkowski's denials and lack of memory were soundly rebutted by the testimony of the police officers who observed Gladkowski before and after he acquired the drugs. The consistency of the officers' statements solidified their credibility and supported Gladkowski's statements that indicated that he had participated in the controlled purchase. Therefore, when the jury was faced

7

with Gladkowski's contradictory statements, claims of at-trial inebriation, and lack of memory, it reasonably concluded that the officer's testimony was credible and Gladkowski had participated in the controlled drug purchase as hinted at in his testimony.

¶ 27    Defendant also argues that Jensen's testimony was incredible as he gave two different reasons for why Gladkowski did not write his statement and he did not see the drug purchase. The inconsistency as to Jensen's reason for writing the statement does not undermine the entirety of his testimony as it relates solely to Gladkowski's perception of the events. The remaining evidence, that the officers were present when Gladkowski arranged the controlled purchase, defendant's vehicle arrived at the arranged location, Gladkowski left with $160 of marked bills and returned with a substance containing cocaine, and the $160 of marked bills were found on defendant following his arrest, permitted the jury to reasonably infer that defendant had sold the drugs to Gladkowski.

¶ 28                               C. Drug Evidence

¶ 29    Defendant asserts that "the substance that Gladkowski allegedly purchased from [defendant] and the substance that the forensic scientist tested were significantly different." To support this argument, he cites the statement by Gladkowski saying that defendant broke off several pieces of crack cocaine and gave it to Gladkowski. Therefore the "primarily powder" substance later tested could not be the same as the more solid substance collected from Gladkowski.

¶ 30    We are unpersuaded by defendant's argument as English testified that the substance collected from Gladkowski was in the same or substantially the same condition as when he collected it. The forensic scientist also testified that the exhibit containing the tested substance was in the same or substantially the same condition at trial as when he received them. Moreover,

8

defendant fails to illustrate how the substance being in a more broken-down state supports his contention that it was not the substance collected from Gladkowski. At best, the slight difference in the state of the substance presented the jury with a question of fact. When presented with this question, the jury reasonably concluded that the substances introduced into evidence at trial were the same substances collected on the date of the offense.

¶ 31                    D. Evidence of Unlawful Possession of a Controlled Substance

¶ 32        Defendant argues officers Schneider and Coash's testimony as to the discovery of the drugs in the squad car was incredible. Although this testimony goes to the unsentenced charge of unlawful possession of a controlled substance, defendant asks that we review it because it discredits the officers' testimony that was related to the unlawful delivery of a controlled substance charge. We note that the court did not enter a sentence on this charge, and therefore, there is no final judgment to review. *People v. Relerford*, 2017 IL 121094, ¶ 71. The supreme court has clearly stated that we "lack[ ] jurisdiction to decide the validity of defendant's unsentenced convictions." *Id.* ¶ 75. Even if we could review defendant's unsentenced conviction, and found Schneider and Coash's testimony about the discovery of the drugs in the squad car to be incredible, it would not render the evidence insufficient to prove the unlawful delivery of a controlled substance charge. The evidence of that charge was clear and consistent, the other officers gave Gladkowski $160 to purchase drugs, observed Gladkowski meet with defendant and return with a substance containing cocaine, and discovered the marked bills on defendant. This permitted the jury to reasonably find defendant guilty of the unlawful delivery of a controlled substance charge.

¶ 33                                III. CONCLUSION

¶ 34        The judgment of the circuit court of Kankakee County is affirmed.

¶ 35        Affirmed.

9

¶ 36        JUSTICE McDADE, dissenting:

¶ 37        I respectfully dissent from the majority's decision to affirm defendant's conviction. I do not believe the State proved defendant guilty beyond a reasonable doubt.

¶ 38        The standard of review for a challenge to the sufficiency of the evidence is that we must view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the essential elements of the crime to be proven beyond a reasonable doubt. Collins, 106 Ill. 2d at 261. Further, "[w]e will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt." People v. Collins, 214 Ill. 2d 206, 217 (2005).

¶ 39        After reviewing the evidence presented in this case, I find that it is improbable, unsatisfactory, and inconclusive such that it created reasonable doubt of defendant's guilt. In reaching this conclusion, I looked at the evidence presented by Jensen regarding Gladkowski's written statement and Gladkowski's failure to present any meaningful evidence.

¶ 40        "Although a jury may infer facts from other facts that are established by inference, each link in the chain of inferences must be sufficiently strong to avoid a lapse into speculation." Piaskowski v. Bett, 256 F.3d 687, 693 (2001). In this case, the inferences the majority relied on lack a direct connection between the offense alleged and defendant. As the State's main witness, Gladkowski presented no evidence that tied defendant to the charged offense. Gladkowski testified that he did not recall meeting defendant on the date the offense took place.

¶ 41        On review, we are not required to defer to every credibility determination made by the fact finder. People v. Wheeler, 226 Ill. 2d 92, 115 (2007) ("The simple fact that a judge or jury accepted the veracity of certain testimony does not guarantee reasonableness."). I find that Jensen's

10

testimony was incredible. In conjunction with Gladkowski's failure to provide any direct or credible evidence in support of the State's case, no reasonable jury could find defendant guilty.

¶ 42    Jensen testified as to his reason for transcribing Gladkowski's written statement. In doing so, he provided two different explanations. Jensen first testified that rather than having Gladkowski write his statement, he transcribed what Gladkowski told him due to "[p]enmanship." Jensen stated that he believed Gladkowski knew how to read and write. Jensen stated that he did not have a sample of Gladkowski's handwriting. Later, he testified that it was KAMEG policy to transcribe the witness statement. Jensen gave his first excuse for writing Gladkowski's statement, and perhaps realizing his excuse did not make sense, he gave another. There was nothing presented to suggest the witness had poor penmanship, which required the officer to write his statement. It would seem to be a better practice to have the witness write their own statement to avoid any amount of suspicion and incredibility of the officer. Jensen offered an incredible explanation for transcribing Gladkowski's statement, the statement was not identified by Gladkowski in open court, it was not in his handwriting, and it was not signed with his name. These facts cast serious doubts on the authenticity of the statement. Gladkowski offers no other evidence directly connecting defendant to the crime alleged.

¶ 43    Without a credible statement from the State's main witness, Gladkowski, the evidence presented failed to establish that a crime ever occurred. The minimal evidence that Gladkowski did present was not credible. The written statement was the only evidence presented to support the crime beyond the officer's testimony. As previously stated, there are questions as to the authenticity of Gladkowski's written statement. There was no video or audio surveillance presented. There was no eyewitness in the vehicle who testified to a transaction. Because Gladkowski presented no credible evidence as to what, if anything, occurred in defendant's

11

vehicle, the jury could not reasonably infer that the alleged crime occurred there. When considering these facts, I would find the evidence insufficient and reverse defendant's conviction.

¶ 44       In conclusion, I acknowledge that it is not the function of the court to retry a defendant (People v. Digirolamo, 179 Ill. 2d 24, 43 (1997)) or substitute our judgment for that of the trier of fact (People v. Evans, 209 Ill. 2d 194, 211 (2004)). Even viewing the evidence in the light most favorable to the State, I cannot find that the evidence was so probable, so satisfactory, and so conclusive as to eliminate all reasonable doubt of defendant's guilt.