2024 IL App (1st) 230730-U
No. 1-23-0730
Order filed December 26, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CR 6494 |
| | ) | |
| JEVON FOYD, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The judgment of the trial court is affirmed where the evidence was sufficient to convict defendant of reckless discharge of a firearm.

¶ 2    Following a bench trial, defendant Jevon Foyd was found guilty of reckless discharge of a firearm (720 ILCS 5/24-1.5(a) (West 2020)) and sentenced to one year imprisonment. On appeal, defendant argues that the evidence was insufficient to prove him guilty where the State did not present evidence that he acted recklessly or endangered the bodily safety of an individual. We affirm.

¶ 3    Defendant was charged by indictment with one count of reckless discharge of a firearm arising from an incident on May 15, 2020.

¶ 4    At trial, Chicago police officer Dorothy Cabe testified that on May 15, 2020, she monitored live video from a pole camera mounted near 225 South Campbell Avenue in Chicago. At approximately 11:32 a.m., Cabe observed a white vehicle stop in front of a grocery cart in the middle of the street. The driver exited the vehicle holding a firearm, pushed the cart closer to the curb, and fired at it. Cabe described her observations, including the license plate number of the vehicle, to other officers.

¶ 5    The State published a portion of the footage from the pole camera, which is included in the record on appeal and has been viewed by this court. The video, which includes a timestamp, depicts a white vehicle drive down a residential street at approximately 11:31 a.m. and stop in front of a metal grocery cart in the middle of the street near an intersection. The cart contains black garbage bags and grey pipes. Residences are visible on the right side of the street before and past the intersection. Past the intersection, a person walks across the street and out of the frame. The driver exits the vehicle with a firearm in his right hand and moves the grocery cart closer to the curb on the left side of the street. Then, the driver extends his arm in front of him at chest level, points at the grocery cart several times, and lets his arm drop. He repeats the same motions, then removes and loads the magazine. Afterwards, he points at the cart and lets his arm drop two more times. Then, the driver returns to his vehicle and drives away. As the vehicle drives away, a person emerges from behind the vehicle and walks toward the grocery cart. In addition, three vehicles are seen driving past the nearby intersection on the cross street.

¶ 6       On cross-examination, Cabe stated that the driver pointed his firearm at the grocery cart. Cabe never spoke to anyone at the address of the incident or traveled to the scene.

¶ 7       Chicago police officer Gerardo Calderon testified that on May 15, 2020, Cabe radioed that the driver of a white vehicle, whom she described by his clothing, pointed a firearm at a grocery cart blocking the street and fired a round into the cart. Cabe also gave Calderon the license plate number of the vehicle. Calderon and another officer found the vehicle described by Cabe, which they curbed. They arrested the driver, whom Calderon identified in court as defendant. During the arrest, defendant held firearms, one in each hand. Calderon determined the firearms were loaded and identified them in court. Calderon also recovered "[o]ne spent shell casing and several additional live rounds" from defendant's vehicle.

¶ 8       Chicago police detective Nicholas Garcia testified that on May 15, 2020, he interviewed defendant in the police station holding room. Garcia identified the recording of the interview, a portion of which was published.

¶ 9       The video of the interview is included in the record on appeal and has been viewed by this court. In the video, defendant admits to discharging a firearm twice that day.

¶ 10       The court found defendant guilty of reckless discharge of a firearm. In ruling, the court commented that defendant fired "a couple of shots" toward the grocery cart which was close to the curb. Defendant's conduct "created a dangerous situation" on the residential street, because it was reasonable to believe that people were in the nearby residences. The court commented that the offense of reckless discharge of a firearm does not require discharge of the firearm in the direction of a person, but it is sufficient that a person "could be in danger" by a defendant's actions.

¶ 11 Following a hearing, the court found defendant unfit for sentencing and ordered him to be admitted for care and treatment with a goal to be restored to fitness within one year. At another hearing six months later, defendant was found to be fit for sentencing. Subsequently, the court denied defendant's motion for a new trial, finding that he shot a firearm on a residential street with the danger of ricochet into nearby houses. The court sentenced defendant to one year imprisonment. Defendant did not file a motion to reconsider his sentence.

¶ 12 On appeal, defendant argues that the evidence was insufficient to prove him guilty of reckless discharge of a firearm because the State did not establish that he acted in a reckless manner or endangered the bodily safety of another person. Defendant contends that his use of the firearm was "slow, methodical, and deliberate" rather than indiscriminate or "wanton," only two other people were visible in the footage of the shooting, and the State presented no evidence that any person was near the gunshots so as to be endangered.

¶ 13 The standard of review for a challenge to the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *People v. Belknap*, 2014 IL 117094, ¶ 67. The trier of fact resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. Accordingly, this court will not retry the defendant or substitute its judgment for that of the trier of fact on the weight of the evidence or credibility of witnesses. *Id*. A reviewing court must allow all reasonable inferences from the record in favor of the prosecution (*People v. Cunningham*, 212 Ill. 2d 274, 280 (2004)) and will not reverse a conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a

reasonable doubt of the defendant's guilt" (*People v. Jackson*, 232 Ill. 2d 246, 281 (2009) (internal quotation marks omitted)).

¶ 14    To prove reckless discharge of a firearm, the State had to prove beyond a reasonable doubt that defendant discharged a firearm in a reckless manner, which endangered "the bodily safety of an individual." 720 ILCS 5/24-1.5(a) (West 2020).

¶ 15    Defendant first challenges the sufficiency of the evidence that he acted recklessly. A person acts recklessly when he "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow *** and that disregard constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation." 720 ILCS 5/4-6 (West 2020). Recklessness may be inferred from all the facts and circumstances in the record. *People v. Barham*, 337 Ill. App. 3d 1121, 1127 (2003). "The State need not prove that the defendant shot a gun knowing that he may injure a particular person to show the defendant's reckless state of mind." *People v. Watkins*, 361 Ill. App. 3d 498, 501 (2005).

¶ 16    Here, the State presented evidence that defendant discharged a firearm in a residential neighborhood at approximately 11:30 a.m. He discharged the firearm at chest level at a metal grocery cart containing garbage bags and pipes after he pushed it toward the curb closer to residences. According to the video of the incident, two other pedestrians were in the area at the time the shots were fired. Thus, a court could have reasonably concluded that defendant's actions disregarded a substantial unjustifiable risk that he would injure a person.

¶ 17    Defendant nevertheless contends that evidence of recklessness depended on attenuated inferences regarding the possibility of ricochet and whether he fired in the direction of residential buildings. See *People v. Cunningham*, 2019 IL App (1st) 160709, ¶ 28 ("The State must present

sufficient evidence from which the inference can be made and any inference must be based upon established facts and not pyramided on intervening inferences." (internal quotation marks omitted)). Defendant claims that his actions were "difficult to understand" but not reckless because they were "slow, methodical, and deliberate." See *People v. Moreno*, 2015 IL App (3d) 130119, ¶¶ 41, 44 (the defendant's act of discharging a firearm into the ground with other people behind him was not *per se* reckless).

¶ 18 We disagree. Taking all reasonable inferences in favor of the State, defendant's actions were reckless. Unlike in *Moreno*, defendant did not fire into the ground in front of him. See *id*. Defendant, rather, extended his arm and fired toward an object close to the curb in a residential neighborhood in the middle of the day. Furthermore, while defendant contends his actions were "slow, methodical, and deliberate," a review of the video shows defendant handling the firearm in a very casual manner and firing without any clear and deliberate aim. As noted, the State did not need to prove that defendant knew that he may injure a particular person in order to establish his reckless state of mind. See *Watkins*, 361 Ill. App. 3d at 501. Defendant's conduct, thus, showed conscious disregard for a substantial and unjustifiable risk of harm and a gross deviation from the standard of care that a reasonable person would exercise in the situation. See *id*. at 501-02 (the defendant acted recklessly where he discharged a firearm into the air multiple times in the backyard of a residence in a residential area).

¶ 19 Defendant next contends that the State did not establish that he endangered the bodily safety of another person, because it did not prove that any other person was in the vicinity of the shots fired or in a position where the shots could have ricocheted.

¶ 20    To endanger a person means that a defendant's reckless conduct "created a dangerous situation—such that an individual was in peril of probable harm or loss." *People v. Collins*, 214 Ill. 2d 206, 215 (2005). Endangerment in this context does not require the discharge of a firearm in the direction of another person. *Id*. at 215-16. Rather, it is sufficient that the defendant discharge the firearm "in such a way as to place a person in danger." *People v. Kasp*, 352 Ill. App. 3d 180, 188 (2004).

¶ 21    Here, the evidence is sufficient to establish that defendant endangered the bodily safety of other people near the scene. As noted, defendant discharged a firearm toward a grocery cart in a residential area after he moved it from the middle of the street toward the curb. The incident took place near noon. The video of the incident shows other people in the vicinity close in time to the shooting. In addition, defendant aimed the firearm slightly toward the cross street, where three vehicles passed by in the video. Given this record, a rational trier of fact could have reasonably concluded that defendant's actions endangered the bodily safety of nearby people.

¶ 22    Although defendant contends that no evidence established that any person was in the vicinity of the gunshots, the evidence contradicts this assertion as two pedestrians and three moving vehicles were shown in the video near the location of the shooting. Further, "the specific identity of the victim is not an essential element and the danger or peril need only be potential or a possibility." *People v. Peel*, 2018 IL App (4th) 160100, ¶ 24 (firing multiple rounds into the ground constituted reckless discharge of a firearm despite no identifiable person in the vicinity). Accordingly, any rational trier of fact could have found that this evidence established that defendant endangered a person's bodily safety. See *Belknap*, 2014 IL 117094, ¶ 67. Consequently, the evidence was sufficient to establish that defendant committed reckless discharge of a firearm.

¶ 23    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 24    Affirmed.